J. L. COON, Appellee, v. W. H. RIEKE, doing business as RIEKE MOTOR TRANSFER LINES, Appellant.

No. 46069.

860

November 24, 1942.

Dutcher, Ries & Dutcher, of Iowa City, for appellant.

D. C. Nolan and A. C. Cahill, both of Iowa City, for appellee.

STIGER, J.—About 6:30 on the morning of December 30, 1940, appellee was driving his automobile east on Highway 6 approaching a bridge, and Harry Hamman, driver of appellant's truck, was approaching the bridge from the east on the highway. The bridge was 20 feet wide and the pavement 18 feet wide. The highway was straight and level for one-half mile west of the bridge and 1,000 feet east thereof. At the time of the accident it was dark and the pavement dry. The collision occurred from 75 to 110 feet east of the bridge. There is a conflict in the evidence. Appellee claims Hamman was driving to the left of the center of the highway at the time of the collision at a speed of 60 miles per hour and appellant claims appellee was driving on the wrong side of the road. The semi-trailer truck weighed six tons and carried from six to seven tons of freight. Each driver wanted to avoid a meeting at the bridge.

I. Appellant's first proposition is that the court erred in overruling his motion for a directed verdict on the ground that appellee was guilty of contributory negligence as a matter of law. Appellant contends appellee violated sections 5023.01 and 5023.04, 1939 Code. We set out the material portions of the sections:

"5023.01 Speed restrictions. * * * and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead, such driver having the right to assume, however, that all persons using said highway will observe the law."

"5023.04 Control of vehicle. The person operating a motor vehicle or motorcycle shall have the same under control and shall reduce the speed to a reasonable and proper rate: * * *

"3. When approaching and traversing a crossing or inter-

section of public highways, or a bridge, or a sharp turn, or a curve, or a steep descent, in a public highway.''

We will set out in substance the testimony of the appellee which appellant contends establishes his contributory negligence:

''When I first observed the truck that was involved in the accident I was probably a thousand feet west of the bridge, maybe a little more. I could tell that it was a truck on account of the clearance lights that trucks and busses have on them.

''As I was travelling along, I usually drive about forty-five to fifty miles an hour, when I saw this truck, I never like to meet on a narrow bridge, so I figured I was a little closer to the bridge than he was I would be across the bridge first, so I drove along my usual rate of speed but I saw the truck was going to be at the bridge, we would meet right on the bridge, I immediately speeded up five miles an hour in order to get across the bridge before the truck could cross. The truck was traveling sixty miles an hour. As it came toward me. it was over the center line when it was coming west quite a ways from me and I thought he would get back before he got to me, naturally thought he wouldn't travel over the center of the line. He was practically half on each side of the line when I first saw him. The truck was about one-third over the line at the time of the collision. He seemed to be pulling back toward his side. My automobile was traveling about 50 miles an hour at the time of the collision. I speeded up my car an extra 5 miles to get across the bridge when I was about 100 feet west of the bridge. When I speeded up my car an extra 5 miles, the truck was about 200 feet east of the bridge.''

Section 5023.04 does not necessarily demand a reduction of speed. This statutory standard of care demanded only that appellee approach the bridge at a speed that was reasonable and proper under the existing circumstances. Carlson v. Meusberger, 200 Iowa 65, 204 N. W. 432; Carpenter v. Wolfe, 223 Iowa 417, 273 N. W. 169.

When appellee was about 100 feet west and the truck about 200 feet east of the bridge, he, to avoid passing the truck on the bridge, increased his speed about five miles an hour. Hamman

also desired to avoid a meeting of the vehicles at the bridge. He testified:

"I wasn't positive the man was going to make the bridge and I didn't want to meet him on the bridge so I started to check down."

At the time of the collision one third of the truck was south of the center of the highway. Appellee further testified:

"As the truck came closer I pulled over as far as I could on my side of the road, on the right-hand side of the road, and gave him all the room I possibly could."

The jury could find that the increased speed avoided passing the truck at the bridge, a danger zone, and decreased the hazard of a collision. We perceive nothing in the appellee's testimony that compels the conclusion there was a causal connection between the increased speed and appellee's injuries. Reasonable minds might readily conclude that the increased speed was reasonable under the circumstances or that the collision would have occurred if appellee had not increased the speed of his car.

Section 5024.02 reads as follows:

"5024.02 Meeting and turning to right. Persons on horseback, or in vehicles, including motor vehicles, meeting each other on the public highway, shall give one-half of the traveled way thereof by turning to the right."

With reference to the speed or the assured-clear-distance-ahead statute, section 5023.01, appellee had the right to assume appellant's driver would obey the law and yield to him one half of the pavement until he knew or should have known otherwise. He had the right to assume the truck would not be in his path at the time the vehicles would meet on the highway, that the distance ahead would be clear, until he knew or should have known the driver of the truck would not yield one half of the traveled way, and appellee did not know appellant's driver would not comply with section 5024.02 until just prior to the collision.

Section 5023.01 is a speed statute and not a stop

statute. Where a motorist is driving on the right-hand side of the highway and an oncoming car traveling in his pathway does not yield one half of the traveled way, but continues bearing down on the motorist on the wrong side of the road, there is obviously no assured clear distance ahead in which to determine the proper statutory speed of the motorist. The duty of drivers approaching from opposite directions is not to stop but to comply with section 5024.02 and yield one half of the traveled way. In Jordan v. Schantz, 220 Iowa 1251, loc. cit. 1256, 264 N. W. 259, 261, we said:

"The plaintiff here had a right to assume that the driver of the defendant's truck would get over on his right-hand side. He was not required to stop until it became apparent to him that the driver was not going to yield one-half of the road, and the obligation to stop then does not arise from the statute, but from the obligation to use ordinary care. The mere fact that a collision occurred in this case does not show, or even tend to show, that the plaintiff was driving at a rate of speed which was unlawful in that such speed did not permit him to stop within the assured clear distance ahead. Our conclusion on this point finds support in the decision of this court in the case of Young v. Jacobsen Bros., 219 Iowa 483, 258 N. W. 104. * * * We there said: .

" 'The appellee had the right to assume that the truck would not be deliberately driven into him, and he did not know, and could not have known until the instant of the collision, that the truck would not be pulled over to its own right side of the road before a collision could occur.' "

We have held that where automobiles are approaching each other on the highway the statute applies only to the motorist driving on his left-hand side of the road. Jordan v. Schantz, supra; Gregory v. Suhr, 224 Iowa 954, 277 N. W. 721. Appellant's motions for directed verdict were properly overruled.

II. The statutory speed limit of appellant's truck was 40 miles per hour. Section 5023.02. The trial court submitted the questions of excessive speed and proximate cause to the jury. Appellant contends the court erred in submitting the question of proximate cause. There is evidence the truck was

being driven at a speed of 60 miles per hour, in violation of the statute; that it approached the place of the collision on the wrong side of the road; that at the time of the collision it was one third over on the right side of the line, and that the truck weighed at least 11 tons.

Under such circumstances, it cannot be said as a matter of law that the negligent speed at which the truck was being driven was not a proximate cause of the collision. Ordinarily, the question of proximate cause is for the jury. Albert v. Maher Brothers Transfer Co., 215 Iowa 197, 243 N. W. 561; Pazen v. Des Moines Transportation Co., 223 Iowa 23, 272 N. W. 126; Blessing v. Welding, 226 Iowa 1178, 286 N. W. 436.

III. One of the specifications of negligence submitted to the jury was that the driver of appellant's truck failed to keep a proper lookout. Appellant contends there was no evidence that warranted the submission of this issue to the jury. We cannot agree with this contention. The evidence warranted a finding that appellant's truck was traveling on the wrong side of the pavement at the time of the collision, through failure to keep a proper lookout as to the true location of the truck on the pavement with reference to the black lines in the center. Pazen v. Des Moines Transportation Co., supra. That the court did not give a definition of a proper lookout in the instructions did not constitute reversible error.

IV. The court submitted to the jury appellee's claims that his lower jaw was paralyzed; that his collarbone was so broken and dislocated that no proper union and healing has resulted and that he lost a partial use of his right arm. Appellant claims these elements of damage were not supported by the evidence. It is only necessary to say in regard to this alleged error that the record justifies the submission of these items to the jury.

On the question of amount of recovery, the court, in instruction 18, said in part:

"In this connection you are instructed that plaintiff would be entitled to recover such amount as would reasonably compensate him for the injuries and damages he sustained *as well* as for pain and suffering he has endured, if any, in consequence of said injuries not to exceed $5,000.00." (Italics supplied.)

Appellant claims the instruction permitted the jury to award $5,000 for physical injuries *and* $5,000 for pain and suffering, and that this "confusion" in the instructions is reflected in the verdict, which was in the sum of $7,500. If appellant's contention is correct, the instruction would permit appellee to recover $5,000 more than the total damages claimed. The instruction then permitted the jury to allow appellee damages for future pain and suffering not to exceed $5,000, and for permanent scars and disfigurement not exceeding $5,000. We think the instruction clearly limited a recovery for physical injuries and past pain and suffering to $5,000 and that the criticism of the instruction is without merit.

Equally without merit is the claim that the verdict of $7,500 is excessive and the result of passion and prejudice. Appellee suffered pain and serious injuries, and the treatment of some of the injuries was painful. Both jaws were broken, nine ribs were broken, his collarbone was fractured; he suffered from extreme nervous shock. The shoulder injury is permanent. There is no feeling in his "right lip and right jaw." At the time of the accident he was earning $50 a week and it was five months before he went back to work regularly. Here is some of the medical testimony:

"The loss of feeling or sensation in the plaintiff's lip or jaw in my opinion will be permanent. * * * This will be discomforting. He wouldn't have the sensation of heat or cold, and his lip could be frozen or burned without him knowing it. * * * There was some impairment of the mobility of the patient's lower jaw as a result of this fracture and repairing it. * * * there is a reasonable likelihood that the impairment or use will be permanent. * * * There was not true apposition of the jaws, but it did not indicate an external operation."

Appellee testified:

"I have a continual headache across the back of my head and down the cord of my neck."

Appellee was in perfect health at the time of the accident, weighing 205 pounds, and at the time of the trial he weighed 175 pounds. On this record it cannot be said the jury abused

its discretion. Bailey v. Fredricksburg Produce Assn., 229 Iowa 677, 295 N. W. 122; Remer v. Takin Bros., 230 Iowa 290, 297 N. W. 297.

It is unnecessary for us to pass upon appellee's motion to dismiss this appeal.

Finding no reversible error, the case is affirmed.—Affirmed.

All JUSTICES concur.