[File No. 7236]

EDWIN HOFFER, Respondent, v. HENRY W. BURD and VALLEY SERVICE, Inc., a corporation, Appellants.

(49 NW2d 282)

Opinion filed March 24, 1951.   Rehearing denied September 18, 1951

*Lanier & Lanier,* for appellant Burd.
*Conmy & Conmy,* for appellant Valley Service, Inc.

*Nilles, Oehlert & Nilles,* for respondent.

GRIMSON, J. This is an action for damages arising out of an automobile collision. The plaintiff claims that on the 16th day of July 1949, he was driving his Dodge automobile in a westerly direction on Highway No. 10 approximately 25 miles west of Fargo in a careful and cautious manner on the right-hand side of the highway. That at such time and place the defendant was driving his Chevrolet automobile in an easterly

direction. That defendant was employed by the Valley Service, Inc., a corporation, (hereinafter referred to as Valley Service), which sold electric appliances and did plumbing, wiring and electrical work, and was returning to Fargo in the due course of his employment. That he drove his car in a reckless and negligent manner on the wrong side of the road and collided with plaintiff's car causing damage and physical injuries for which he seeks to recover.

The defendant, Henry W. Burd, admits the collision and that he was at the time acting as agent or employee of the Valley Service, but denies any negligence on his part and alleges that the collision was due to the negligent and reckless manner of driving by the plaintiff and counterclaims for his injuries and damages.

The defendant, Valley Service, makes a general denial and specifically denies that the defendant, Burd, was at the time and place of the accident acting as an agent or employee of Valley Service, and further denies that the accident and injury were caused by his negligence but alleges that they were caused by plaintiff's contributory negligence.

The case was tried to a jury who found in favor of the plaintiff and against both defendants. From the judgment entered on its verdict both defendants appeal.

The evidence shows that this accident happened about 2:30 P.M. on Saturday, July 16, 1949 on a slight elevation on a straight, paved highway. The weather was clear and the visibility good. The plaintiff was an orderly in a hospital in Minneapolis and had driven from there that morning. The defendant, Burd, was a salesman for the defendant, Valley Service, and had been taking orders in the vicinity of Marion and Eckelson, North Dakota, during the latter part of the week. He worked on both a salary and commission and was paid mileage for the use of his car. On Friday night he stayed with his mother at Valley City and visited around Valley City Saturday forenoon. After lunch he started his return to Fargo on the same route he had used when he went out to his work. He carried with him some orders that he had taken during the week and had in the car advertising material and pictures of

the company products. On this slight elevation on the highway, about a mile and a half west of Wheatland, about 25 miles west of Fargo, he passed a truck and shortly thereafter the collision occurred.

The evidence shows that the front of plaintiff's car was badly crushed. The right front of the defendant's car, including the fender and wheel, were badly smashed. After the collision plaintiff's car was lying on its left side facing southwest, across the south half of the highway. The defendant's car was upright, facing southeast with the rear end "on the north side of the road." Both vehicles were on the paved portion of the highway. The debris, broken glass and radiator fluid were on the south lane of the paving. The tracks from the Burd car led into the north lane of the highway.

Mr. Pfau, the driver of the truck which the defendant had passed, and who saw the collision, testified that he watched the defendant, "edging over until he was about entirely in the north lane" where Pfau claims the collision happened. He testified that just before the accident plaintiff's car swung a little to the left.

Plaintiff testified that he saw the defendant's car coming on the north side of the highway, "The driver was sitting with his head down." That before the accident happened, "he turned his wheel as far as he could to the right and hit my front end."

Defendant's testimony was that he did not remember passing the truck but as he was driving down the road he saw a car which "seemed to be right in the middle of the road. I just took it for granted that it would get back on its own right half of the road before it got too close to me and as I was driving along and he was coming at me and he got close enough so I was afraid he was not going to turn to his right half of the road I glanced at the ditch. There was a culvert there and I couldn't very well take to the ditch, and when I straightened my head up to see how close he was it happened that quick." He claims that he was on his right side, the south side, of the highway. He was rendered unconscious by the crash.

Of the 22 specifications of error filed, 13 concerned the admission of evidence. The remaining assignments are addressed to

the denial of motions to strike testimony and to direct a dismissal as to Valley Service, to the argument of counsel and to the instructions of the court.

The first series of those specifications relate to the testimony given by two highway patrolmen who arrived on the scene of the accident about an hour after it happened.

Objection was made to their testimony regarding the wheel tracks found at the scene of the accident. Harry Nathan, one of the patrolmen was asked: "State whether or not you were able to observe the wheel marks from the Burd automobile . . . leading up to the scene of the accident or point of the accident?" And again, "Tell the jury what course those marks took and whether or not they led up to the wheels of the Burd automobile?" That was objected to as "no foundation laid and calling for a conclusion of the witness" and a motion was made to strike out the testimony on the same grounds. Similarly, the other patrolman, Charles Puntin, was asked: "Did you observe whether those tire marks led up to the wheel of the Burd automobile?" Ans: "I did." Q.—"Did they?" Ans.—"Yes, they did." Objection was made to the questions and a motion made to strike the answers on the ground that there was no foundation laid. At the conclusion of their testimony a motion was made to strike all of the testimony of those witnesses concerning the tracks as "a conclusion of this witness, no foundation laid for it."

Before these questions were asked Pfau had testified as to the location of the cars where they came to rest after the accident. He stayed there until after the patrolmen came. There was no testimony that they had been moved in the meantime and the description of their location as given by both Nathan and Puntin prior to this testimony coincides with what Pfau had testified. Clearly there was sufficient evidence for the jury to find that they had not been moved. The Burd car was standing on its wheels and the testimony of the patrolmen is that they had traced the tracks back from the wheels of the Burd automobile. They testified to what they had observed. That was a statement of fact. If there was any conclusion mixed in that fact it was only such as always is involved in testimony de-

scribing observations. In Wilson v. Northern Pacific Railway Co. 30 ND 456, 487, 153 NW 429, this court says: "Every result of the use of the eyesight is, as a matter of last analysis, a deduction or conclusion. If judgments were reversed for answers such as the one before us, none of them would stand." In the case of Seckerson v. Sinclair, 24 ND 625, 628, 140 NW 239, this court says: "Nor did the court err in refusing to strike out the answer of the witness Seckerson to the question: 'Did you follow these traces (of fire) carefully for the purpose of determining where the fire originated?' The objection was based on the assumption that the question called for a conclusion of the witness" and this court held that: "Where a witness gives the results of what he saw, his testimony is not objectionable on the ground that it is a conclusion rather than a statement of facts."

A Mr. William Leeman was called by the plaintiff. He testified that he drove upon the scene of the accident very soon after it happened. That he had first noticed the Burd Chevrolet six miles east of Valley City and had trailed it more or less to the scene of the accident. That it passed him twice and he passed it once parked by the side of the road. He was asked: "Will you tell the jury what you observed in his driving from the time when you first saw him up to the time that you came to the scene of the accident?" That was objected to on the ground of lack of identification of the person and on the further ground that no foundation had been laid. Upon cross examination for a further objection Leeman admitted that he could not identify Burd as the driver and answered: "All I know it was a '39 Chevvie . . . and I know it hit the Dodge." The objection was renewed on the ground that: "It could be any '39 Chevvie. Highly prejudicial." At the conclusion of his testimony a motion was made to strike all his testimony "in so far as it is an attempt to hook up what he saw with the defendant, Burd, as being improper and no foundation having been laid." The motion was denied.

It will be noted that Mr. Leeman testified positively that the Chevrolet he saw east of Valley City was the one that hit the Dodge in this accident. The passing and repassing and parking

by the side of the road of the Chevrolet gave special opportunity to notice it. That was sufficient foundation for the admission of Leeman's testimony and for the denial of the motion to strike it out. While there might have been something of a conclusion in his testimony it was based on what he saw and the weight of that testimony, on the basis shown in the evidence, was for the jury.

The defendant, Burd, had been called for cross examination and on such examination was asked if he had not been drinking intoxicating liquor the morning of the accident which he denied. Then he was asked if it was not a fact that he had told a student nurse, Miss Geraldine Peterson, in St. John's Hospital shortly after the accident that he had been drinking and that he got into the north lane and that it was his fault. He denied that. When Miss Peterson was called as a witness she, after telling that she had had a conversation with Burd after the accident and while she was taking care of him, was asked: "Now will you tell us what he told you at that time about the collision and the occurrence of that accident?" That was objected to on the ground, "that there is no foundation laid. Not definite enough," which was overruled. It is argued that this was impeaching testimony and should have been submitted to the jury, if at all, only for impeaching purposes. No request had been made to have the jury so instructed. Moreover, the testimony of Miss Peterson as to what defendant had told her on this matter is more than impeaching testimony. It is an attempt to prove an admission on the part of the defendant, Burd, quite material on the issues involved. While it may, in a measure, be impeaching testimony it is also substantive evidence on the matters in issue. Her testimony was properly admitted.

On this issue of intoxication the defendants allege error on the part of the court in submitting to the jury the question of whether the defendant, Burd, was driving under the influence of intoxicating liquor. An examination of the court's instructions shows that the court merely stated that one of the claims of the plaintiff was that the defendant was driving while under the influence of intoxicating liquor. That is the only reference

to that phase of the case in the instructions. The plaintiff attempted to support that claim by the evidence of Leeman and the two nurses heretofore referred to. Then there is further evidence that when the plaintiff and defendant were taken to the hospital a bottle of whiskey was taken from the first man brought into the emergency room. There is a dispute in the evidence as to who was the first man but the plaintiff claims it was Burd. Clearly there was sufficient evidence to warrant this statement of the court to the jury that the plaintiff claimed defendant was under the influence of liquor.

Miss Wicka, the nurses' aide who had attended the defendant, Burd, and as a foundation for introducing statements that he had made in conversation with her, was asked: Q.—"Was he talking rationally?" Ans.—"He was rational." A motion was immediately made to strike that testimony on the ground that she was not competent to testify and that no foundation had been laid.

The defendants argue that there was no foundation to qualify the witness as an expert so as to make her opinion admissible. The weight of authority, however, is that a lay witness may give his opinion on such matters as the appearance and physical condition of a person where that opinion is based on the observation of composite facts which could not be fully conveyed to the jury. In Nelson et al v. Thompson and Fulton, 16 ND 295, 301, 112 NW 1058, this court quotes with approval the following:

" 'It often happens that it is impossible for a witness to detail all the pertinent facts in such a manner as to enable a jury to form a conclusion without the opinion of the witness. Indeed, the witness might not be able to separate the facts and indication from which he has formed a conclusion from the conclusion itself. Accordingly, a witness may testify to his own state of health. This is not a matter of opinion in the sense that it calls for expert testimony. So ordinary witnesses have been allowed to express opinions as to whether another person seemed to be suffering pain, or whether he seemed nervous or sad, or in pain or good health, or whether a person's mind seemed to be clear or had failed.' Jones on Evidence, Pars.

361, 362 and cases cited. In the case of People v. Sanford, 43 Calif 33, the court, referring to this class of testimony says: 'It approaches knowledge, and is knowledge, so far as the imperfection of human nature will permit knowledge of those things to be acquired, and the result thus acquired should be communicated to the jury because they have not had the opportunities of personal observation, and in no other way can they effectually have the benefit of the knowledge gained by the observation of the others.'" And this court held "that the objection to the introduction of such opinion testimony should be overruled."

In Dolan v. Henry, 189 Iowa 104, 177 NW 712, 719, this question was asked of a witness: "State whether or not your father was delirious." an objection on the ground that this called for a conclusion was sustained. The Iowa Supreme Court said: "Whether he was delirious could be determined only from his speech and conduct, and, therefore, was in the nature of a conclusion but a conclusion of fact which might not be otherwise proven. The facts indicating that he was delirious could not well be reproduced or described to the jury precisely as they appeared to the witness, and for this reason, under a well established rule, witness should have been permitted to answer the question." In the case of White v. State, 103 Ala 72, 16 So 63, the witness was asked: "Did White, at the time of his conversation with you, talk with his usual intelligence?" which the witness answered, "Yes sir, I think so." The court said: "It was impossible for the witness to reproduce the manner, tone of voice, the exact words used, and other conditions which would reflect the usual intelligence of the defendant; hence it was competent for one who heard and saw these conditions, to state as a collective fact that the defendant talked with his usual intelligence. Lawson Exp. & Op. Ev. 473." See also McKelvey on Evidence, 220, 7 Wigmore on Evidence, Third Edition, Sec 1974, Corporeal Appearances of Persons and Things, p 113; State v. McKnight, 119 Iowa 79, 93 NW 63; Donahue v. Meagley, 220 App Div 469, 221 NYS 707; West Chicago St. R. R. Co. v. Fishman, 169 Ill 196, 48 NE 447; Peters v. State, 240 Ala 531,

300 S 404, 409; State v. Dale, 66 SD 418, 284 NW 770; Miller v. Miller, 237 Iowa 978, 23 NW2d 760.

Error is assigned on the cross examination of defense witness, Ritmiller, in regard to the young lady who was with him when he drove up to the scene of the accident, on the grounds that it was immaterial and prejudicial. The objection to the particular question was not made until after it had been answered. Under the circumstances no prejudice can be presumed therefrom.

The main defense of the defendant, Valley Service, is that defendant Burd was not within the course of his employment by the Valley Service at the time of the accident. There is no denial of the claim of the plaintiff and of the defendant, Burd, that he was an employee of Valley Service and in addition to a salary and commission was paid mileage for the use of his car. As salesman he had territory both in North Dakota and Minnesota and solicited orders along routes and schedules of his own determination.

During the cross examination of the defendant, Burd, concerning his employment with defendant, Valley Service, he was asked: Q.—"Then I understand your testimony is that the Valley Service, Inc. had no control over the operation of that automobile?" Mr. Oelhert: "That calls for a legal conclusion of the witness." The court: "Objection sustained."

Counsel for both plaintiff and Valley Service had cross examined defendant, Burd, without objection, on the method of the use of his automobile in connection with his work for the Valley Service. That examination disclosed that he could find his customers anywhere in North Dakota or Minnesota and that no limitation was put on his routes or method of work. The particular question objected to did call for a legal conclusion and was properly sustained. Even if it were called an ultimate fact and admissible the refusal to allow an answer was without prejudice as the facts on which such conclusion could be based are all in the evidence.

At the close of Burd's testimony and again at the close of all the testimony, Mr. Conmy, on behalf of the Valley Service,

moved to strike from the record all the evidence of the defendant, Burd, in regard to his being in the pursuance of his employment by the Valley Service, at the time of the accident, on the ground that such testimony was purely a legal conclusion. Both motions were properly denied. Much of his testimony bearing on that matter was admitted without objection. No particular answers were specified in the motion to strike.

The main argument of the defendant, Valley Service, is directed to the denial of the motion for a directed verdict of dismissal as to the Valley Service, on the ground "That the testimony shows as a matter of law that the defendant, Burd, was not within the scope of his employment at the time of the accident, and, consequently, there was no responsibility or liability on the part of the defendant, Valley Service, to the plaintiff for any negligence of the defendant, Burd." The basis of this claim is that when the defendant Burd stayed at his mother's house in Valley City on Friday night and visited around Valley City Saturday morning he abandoned his employment by the Valley Service for the time being that he was on the way to his home at Fargo for the weekend and that since he solicited no orders in Valley City nor on his way back to Fargo, he had not returned to that employment when the accident happened. The evidence shows, however, that as well as returning home Burd was returning to his employer's place of business as was his custom on Saturdays with the orders he had taken during the week and had in his car catalogues and pictures of their products. Even, if it is considered that during the time defendant was in Valley City he departed from his employment for purposes of his own, the question arises whether he had not resumed that employment in proceeding towards his employer's place of business just as was his custom on other occasions and as he would have done had he never deviated from his employment.

It is true as argued by the defendant, Valley Service, that the crucial question in this matter is whether at the time of the accident plaintiff was acting within the course of his employment. McIntee v. Baker, 66 ND 669, 672, 268 NW 661; Bodle v. Wenner et al, 66 ND 502, 509, 266 NW 894; Erickson v. Foley,

65 ND 737, 262 NW 177. Each case, however, depends on its own facts and circumstances. On that basis the cases cited by the appellant are distinguishable from the case at bar.

In Kohlman v. Hyland, 54 ND 710, 716, 210 NW 643, 50 ALR 1437, this court passed upon a state of facts somewhat similar to the instant case. An employee of the defendant was driving defendant's runabout truck carrying a box of tools and supplies, accompanied by another employee and the defendant's son. He was instructed to drive from Hillsboro to McKenzie County where his employer was engaged in building telephone lines. He was told to drive by way of Mayville, Finley, Cooperstown and Carrington where he was to remain overnight. Instead he departed from the prescribed route at the request of the other employee and from Finley proceeded in a northwesterly direction to McVille to give the employee an opportunity to visit his sister. This was about 18 miles out of the way. From McVille he proceeded to Carrington by way of New Rockford. A mile east of New Rockford a collision occurred and the plaintiff was injured. In that case similar arguments as in the case at bar are made and analyzed. The court says:

"The primary question is whether the servant was, at the time of the accident, performing any act in furtherance of his master's business. He was undeniably en route back to the course from which he departed and to the designated place where he and his associates had been directed to remain for the night; in other words, he had resumed his purpose to go to McKenzie County, and was carrying equipment and passengers in the master's conveyance, and on the master's business. The correct test is whether the negligent act was committed in the course of the servant's employment, or outside of it. We believe that the testimony in this case is fairly susceptible to the interpretation that the servant was within the course of his employment at the time of the collision. In other words, we do not think that the court was warranted, as a matter of law, in holding that the accident occurred while the servant was entirely upon his own business and outside the course of the employment, and, that this question should have been left in the circumstances here disclosed, to the determination of the jury. Whether the

servant Ludwig had completely departed from or abandoned the defendant's service at the time of the accident, was, in all the circumstances, a question of fact to be resolved by the jury under appropriate instructions as to the law."

In the case of Garriepy v. Ballou & Nagle, Inc., 114 Conn 46, 157 A 535, it is held: "Slight or immaterial deviations from course of employment by employee do not suspend master's liability for employee's acts." And further "Whether truck driver who negligently injured acquaintance in drawing up to curb to take him on, contrary to instructions, was acting within the scope of employment held jury question." In Anderson v. Southern Cotton Oil Co. 73 Fla 432, 74 So 975, it is said:

"It has been held that where without the employer's knowledge or consent there is a deviation in the use of an automobile from the direct line of the employer's business solely for the purposes of the employee or where there is a temporary abandonment of the employer's business for the employee's own purposes, and an injury was inflicted by negligent driving while the employee was returning to the sphere of the employer's business, the question as to whether the employer is liable should be submitted to the jury under appropriate instructions."

See also Leonard v. North Dakota Co-operative Wool Marketing Association, 72 ND 310, 6 NW2d 576; Fischer v. Havelock, 134 Cal App 584, 25 Pac2d 864; Lausche v. Dennison-Harding Chevrolet Co. 185 Minn 635, 243 NW 52; O'Leary v. North Dakota Workmen's Compensation Bureau, 62 ND 457, 243 NW 805; George v. Carstens Packing Co., 91 Wash 637, 158 Pac 529; Jones v. Weigand, 134 App Div 644; Slothower v. Clark, 191 Mo App 105, 179 SW 55; Carrier v. Donovan, 88 Conn 37, 89 A 894; Gibson et al v. Dupree, 26 Colo App 324, 144 Pac 1133, 5 Blashfield's Cyc. of Automobile Law and Practice, Salesman—Acts Within Scope of Employment, p 140; Resumption of Employment, Sec 3047, p 208, 57 CJS Master and Servant, Sec 617, p 409; Barley v Asbridge, 61 ND 330, 237 NW 758.

In the case at bar the testimony showed that the employee defendant, Burd, was at the time of the accident returning towards his employer's place of business with his orders and its advertising material. That he was on the route he had taken

on going out to his work and by which he had to return in the course of his employment and on which he was paid mileage for the use of his car. That he was doing just what he would have done had he never abandoned his employment on that trip. This evidence is clearly sufficient to require the submission of the question of whether defendant, Burd, was in the course of his employment to the jury. It was not error, therefore, to deny the motion for a directed verdict in favor of the defendant employer.

On this matter defendant, Valley Service, also assigns error when the court in its instruction to the jury read from defendant Burd's answer, that he admitted that at the time of the accident, he "was acting as agent or employee of the defendant, Valley Service, Inc., a corporation." The court also told the jury that the Valley Service specifically denied that the defendant, Burd, was acting as its agent or employee. The court clearly indicated that these were only claims of the different defendants. The jury was afterwards distinctly told that such claims were not evidence. Furthermore, this particular question was later fully covered in the instructions.

Both defendants joined in a motion for a mistrial on the ground that the conduct and remarks of plaintiff's counsel in the course of his arguments to the jury amounted to misconduct. The complete argument was taken down in shorthand, and made a part of the transcript. The reading thereof shows that the acts and phrases assigned as error, which of themselves might be considered objectionable, were modified by other statements accompanying them and whenever objection was made the court took precautionary measures to overcome any error. For instance, before the plaintiff's attorney read from a portion of the cross examination of a witness for the defendant which he said he got from the court reporter, he qualified his reading by saying: "You must take this from your recollection. I can't make statements." Following that he was allowed to read much of the cross examination before an objection was made to his use of the transcript. The court then cautioned him: "Stick to the testimony." Some phrases used in building up the credibility of his witness may have been

rather extreme and perhaps double edged as claimed by defendants and references to the defendant, Valley Service, as a Minnesota corporation came near to being an appeal to prejudice. However, until after the close of plaintiff's first argument no objection was made to specific statements in the argument and the only request was a motion for a mistrial. When an interruption was made during counsel's closing argument and the court was asked to instruct the jury to disregard some statements made, counsel withdrew the objectionable remarks and the court said: "The jury will be admonished in the instructions to disregard any argument which is not in evidence." Clearly that incident was cured. Arnold et al v. McKelvey, 253 Pa 324, 98 A 559. No objection was made when counsel referred to evidence in other cases but in the instructions the court said: "If counsel upon either side during the course of the trial or during the heat of argument have made any statements not warranted by the evidence you should wholly disregard such statements in arriving at your verdict."

This court in the case of State v. Nyhus, 19 ND 326, 124 NW 71, laid down the rule that counsel in argument may make legitimate comments on the evidence but must not give any independent testimony of his own. Then in State v. Knudson, 21 ND 562, 132 NW 149, this court held that "Where the defendant alleges misconduct on the part of the state's attorney in his argument to the jury, and relies on the same as ground for reversal, he must first seasonably object thereto, and obtain a ruling from the trial court thereon, requesting the court to take action by reprimand to the counsel, instructions to the jury, or other suitable action." See also Leach v. Nelson, 50 ND 538, 196 NW 755. In State v. Braathen, 77 ND 309, 43 NW2d 202, 215, this court held: "In this instance the defendant requested no action on the part of the court to minimize or relieve the effect of the remarks upon the jury. By a motion for mistrial he sought to have the trial terminated then and there, and the jury discharged. A mistrial is in legal effect no trial at all. State v. Young, 55 ND 194, 212 NW 857; Bolstad v. Paul Bunyon Oil Co., 215 Minn 166, 8 NW2d 346."

A mistrial is granted generally on some fundamental failure

in the proceeding, as for instance, the absence of the judge from the courtroom, State v. Darrow, 56 ND 334, 217 NW 519; when the verdict returned by the jury is incomplete so that no final judgment can be rendered thereon, Sonnesyn v. Akin et al, 14 ND 248, 104 NW 1026; Ward v. Gradin, 15 ND 649, 109 NW 57; want of Jurisdiction, Illinois Oil Co. v. Grandstaff, 118 Okla 101, 246 Pa 832. A mistrial may also be granted "when necessary to prevent the defeat of justice or in furtherance of justice." 53 Am Jur Sec 967, Trial, p 679.

In such cases the trial court has wide discretion, Heiler v. Goodman's Motor Express Van & Storage Co., 92 NJL 415, 105 A 233. The granting of a mistrial is an extreme remedy and voids all proceedings taken in the case up to that time. All the authorities agree that the practice should be resorted to only "when further proceedings therewith would be productive of great hardship and manifest injustice." Usborne v. Stephenson, 36 Ore 328, 48 LRA 432, 437. In such cases only where something has happened to make it apparent that justice will not be served by continuance of the trial is the granting of a motion for a mistrial the proper remedy.

That conclusion cannot be reached in the case at bar. The trial court took such measures as he thought necessary under the circumstances to cure any error that might have occurred during counsel's argument. The evidence fully sustains the verdict reached. If there was any misconduct of counsel in his argument its effect is not indicated in the verdict. The trial court, who "breathed the atmosphere of the trial" and was in a position to determine whether any prejudicial effect resulted from the argument, denied the motion for a mistrial. No abuse of discretion is shown. If any of the remarks or actions of counsel were improper they were of such a nature that objection thereto should have been made and the proper action asked of the court at the time they occurred.

Error is assigned by Valley Service on the following instruction by the court: "You are instructed, before you can bring in a verdict against the defendant Valley Service, Inc. in this lawsuit, that plaintiff Hoffer must have proved by a preponderance of the evidence, first, that the defendant Burd was negli-

gent; second, that the negligence of the defendant Burd was the proximate cause of Hoffer's losses and injuries; and third, that at the time of the accident the defendant Burd was in the course of his employment as a wiring salesman for Valley Service Inc." It is claimed that this fails to take into consideration contributory negligence. That was done in a separate instruction.

Error is also assigned by Valley Service on the failure of the court to define "scope of authority" or "course of employment" in its instructions to the jury and because the court "failed to tell the jury that there could be no liability on Valley Service, Inc. unless they found that Burd was actually engaged in the work of Valley Service, Inc., at the time this accident occurred and that the trip from Valley City to Fargo would only have been made at the time it was made because of the business of Valley Service, Inc."

The record shows that the instruction above quoted was requested by the Valley Service and given without change. In that instruction the term "in the course of employment" is used without a definition thereof and no request was made for an instruction along the lines of the last above assignment of error. The above requested instruction that was given briefly covers the matter included in that assignment. Valley Service cannot avail itself of any defects in that instruction or of the failure of the court to cover the matter therein contained more fully. "An appellant or plaintiff in error will not be heard to allege error in instructions which were given at his request by the trial court . . . . Accordingly when the instruction requested by him is given in charge by the court, he is estopped to object that it was not sufficiently specific; that it was not complete . . . or [that it was] misleading." 5 CJS Sec 1507, Instructions and Refusal Thereof, p 201.

Both defendants also make a general assignment of error that the charge of the court is "prejudicial, confusing and erroneous in that, A: It covers and includes issues and law not involved in this action . . . B: It does not define contributory negligence or its legal effect but confuses this issue by including what would amount to contributory negligence and a

definition of proximate cause and unrelated and unforeseen causes. C: It does not clearly or properly submit defendants' counter claim or properly instruct the jury on it."

A careful consideration of the charge fails to support these assignments. The instructions must be read and considered as a whole and when so considered, they cover the matters in issue under the evidence fairly and fully. Moline Plow Co. v. Gilbert, 3 Dak 239, 15 NW 6, 30 L Ed 476; Axford v. Gaines, 50 ND 341, 195 NW 555; Huether et al v. Havelock Equity Exchange et al, 52 ND 786, 204 NW 828; Blackstead v. Kent, 63 ND 246, 247 NW 607; Butler v. Aetna Life Ins. Co. 64 ND 764, 256 NW 214; Rott v. Provident Life Ins. Co. 69 ND 335, 286 NW 393; Haslam v. Babcock, 71 ND 363, 1 NW2d 335; Froh v. Hein et al, 76 ND 701, 39 NW2d 11.

The Judgment of the trial court is affirmed.

MORRIS, C.J., BURKE and CHRISTIANSON, JJ., concur.

SUTHRE, J., did not participate.

PER CURIAM. A rehearing was had upon the petition of the defendants. In the petition defendants laid especial stress on the alleged misconduct of counsel for the plaintiff in his argument to the jury. It appears that the witnesses called on behalf of the plaintiff had been subpoenaed and in his argument plaintiff's counsel dwelt on this fact and argued that witnesses who had been subpoenaed were more likely to tell the truth than those who appeared and testified without having been subpoenaed. In speaking of one of the witnesses who had testified in behalf of plaintiff he said: "He didn't come up and volunteer his testimony like Mr. R. (a witness who testified on behalf of the defendants) did." He said: "In my experience a witness testifying under a subpoena is more likely to tell the real truth." He further said: "Beware of a volunteer." "Be careful of a volunteer witness." In referring to the testimony of the different witnesses he continually stressed that witnesses to whom he referred by name, who had testified for the plaintiff, had been subpoenaed. In speaking of a witness for the

plaintiff he said, "Remember he is disinterested and another subpoenaed witness here." Referring to the proof that plaintiff had adduced he said, "Subpoenaed witnesses. We can't sandpaper those witnesses." Counsel for the defendants objected to the statements of counsel for the plaintiff that "we don't sandpaper witnesses." That such statement was prejudicial and a clear inference that "defendants do sandpaper witnesses," and asked the court to declare a mistrial. As shown by the former opinion the court denied the motion for a mistrial. In his final argument to the jury plaintiff's counsel referred to the objection that had been made to his statements relating to "sandpapering witnesses." He stated that he did not mean to infer that opposing counsel had "sandpapered" witnesses. He stated: "I said that a witness that is under subpoena, there is not a possibility of sandpapering him, and the witnesses we had were under subpoena." In his argument plaintiff's counsel made other statements that are criticized by defendant's counsel. Among such statements was one to the effect that one of counsel for the defendants "represented big corporations in North Dakota." The statement should not have been made, but there is no likelihood that it affected the verdict and deprived the defendants of a fair trial.

The argument that witnesses who testified after being subpoenaed are more likely to tell the truth than those who are called to testify without having been subpoenaed and that the witnesses that have been subpoenaed cannot be "sandpapered" presents a more serious question. These statements were not made on the spur of the moment. They were apparently made deliberately, as the foundation for such argument had been laid in the course of the trial and in the examination of witnesses. The purpose of the argument is clear. It was to convey the idea that a person, after being subpoenaed, is more credible and more likely to tell the "real truth" than a witness who had not been subpoenaed and that this statement is based upon the experience of plaintiff's counsel. That "subpoenaed witnesses" cannot be sandpapered; that "there is not a possibility of sandpapering" "a witness that is under subpoena," with the inference that these assurances do not apply to witnesses

who have not been subpoenaed. There was, of course, nothing in the evidence on which to base any such assertions. To subpoena a witness does not give his testimony any greater standing or force or credibility than if the witness was produced and testified without having been served with a subpoena. The argument was improper and unwarranted and defendants' counsel was justified in objecting to the argument and it should have been dealt with by the trial court more specifically and forcefully than was done; nevertheless, in view of the record as a whole we do not believe that the improper argument constituted a ground for ordering a mistrial or for a new trial. The fact that counsel is guilty of misconduct in making an improper argument does not require or justify a reversal of the verdict that has been rendered unless it is likely that the misconduct affected the verdict and thus deprived the party against whom the argument was made of a fair trial. If it appears that it is not likely that such conduct affected the verdict or deprived the party against whom the verdict was rendered of a fair trial, then the verdict will not be disturbed.

A litigant should not be deprived of a verdict in his favor and thus penalized because of the improper conduct of his counsel unless it is likely that such conduct resulted in prejudice to the adverse party and operated to deprive him of a fair trial. 3 Am Jur, Appeal and Error, See 1062, p 609, Sec 1063, p 610, Sec 1072, p 613, Sec 1075, p 614; Northern Trust Co. v. Bruegger, 35 ND 150, 175, 159 NW 859, 867. After careful consideration of the record we do not believe that the improper argument could have affected the verdict.

Defendants also contended that the trial court erred in reading the pleadings and in giving "stock instructions" wherein reference was made to certain statutory provisions concerning the operation of motor vehicles, not pertinent to the issues involved in this action. There is some merit in the criticism of the instructions. This court has criticized and disapproved the practice of reading the pleadings as a part of the instructions. Black v. Smith, 58 ND 109, 224 NW 915. The instructions should cover only questions at issue as presented by the pleadings and the evidence that has been introduced. However, it does

not appear likely that any prejudice could have resulted from the reading of the pleadings or from the instructions that were not pertinent, but the instructions were of such nature that while wholly unnecessary the jury could not have been misled thereby.

We have again considered the various assignments of error presented on this appeal and discussed in the original opinion and while we disapprove of the statements made by plaintiff's attorney in his argument, referred to above, as well as the practice of reading the pleadings in the course of the instructions to the jury and the giving of instructions which are not necessary for the guidance of the jury, nevertheless, we do not believe that any of these affected the verdict and deprived the defendants of a fair trial. We adhere to the views expressed in the original opinion that the evidence is sufficient to sustain the verdict and that the verdict is not excessive. On the record as a whole we do not believe that the defendants were deprived of a fair trial or that there is any likelihood that a new trial would change the result.

MORRIS, C.J., and CHRISTIANSON, SATHRE and BURKE, JJ., concur.