FRED WEILBRENNER, appellee, v. JUNIOR OWENS and SWIFT & COMPANY, appellants.

No. 48672.

(Reported in 68 N.W.2d 293)

FEBRUARY 8, 1955.

Pryor, Hale, Plock, Riley & Jones, of Burlington, for appellants.

Beckman & Ruther, of Burlington, for appellee.

GARFIELD, J.—Defendants have appealed from a judgment against them on a jury verdict for $26,662 as damages due plaintiff from a collision between his automobile and a tractor-trailer owned by defendant Swift & Company, driven by its employee, defendant Owens. Defendants urge three grounds for reversal: (1) contributory negligence as a matter of law; (2) error in receiving certain evidence of tire marks; and (3) allowance of excessive damages. We hold no reversible error appears in any of these respects.

The collision occurred about 6:30 a.m., September 22, 1952, on a hill on U. S. Highway 61 between Burlington and Fort Madison. Plaintiff was driving his Chevrolet car south toward Fort Madison. Defendant Owens was driving the tractor-trailer north toward Burlington. Plaintiff was ascending a long hill where the pavement curved to his left. The "semi" was descending the hill. Of course the pavement curved to Owens' right. There is much evidence that the front left side of the Chevrolet and the rear left side of the trailer collided on plaintiff's side of the highway.

I. Defendants moved for a directed verdict on the ground plaintiff was guilty of contributory negligence as a matter of law in failure (1) to keep a proper lookout and (2) to operate his car so as to avoid the collision, he having testified he observed the truck several hundred feet before the collision and it was approaching across the center line of the highway. The motion was properly overruled.

In considering this assigned error of course we view the evidence in the light most favorable to plaintiff. Worthington v. McDonald, 246 Iowa 466, 468, 68 N.W.2d 89, 90.

The issue of plaintiff's freedom from contributory negligence is ordinarily one of fact for the jury except where, under the entire record, plaintiff's contributory negligence is so palpable that reasonable minds may fairly reach no other conclusion. Miller v. Griffith, 246 Iowa 476, 479, 66 N.W.2d 505, 507, and citations. See also Franzen v. Perlee, 243 Iowa 285, 288, 51 N.W.2d 478, 480. We have held many times that if there is any evidence tending to establish plaintiff's freedom from contributory negligence that issue is for the jury. Huffman v. King,

222 Iowa 150, 154, 268 N.W. 144, 147, and citations; Pierce v. Dencker, 229 Iowa 479, 484, 294 N.W. 781, 783; Smith v. Darling & Co., 244 Iowa 133, 144, 56 N.W.2d 47, 53.

Plaintiff and defendant Owens are the only eyewitnesses to the collision. Other witnesses regarding the collision testify mainly as to location and condition of the two vehicles and the presence of tire marks on the highway soon afterwards.

Plaintiff says he first saw the truck when it was about 800 feet away but because of the curve in the highway and the trees he could not see whether it was on its right side of the center line until it was 200 to 400 feet away. He then saw it straddling the center line. He immediately turned to the right as far as he could, to within a foot of the guardrail which was about six feet west of the west edge of the pavement. Thus, according to plaintiff, when the collision occurred his car was entirely off the pavement except perhaps his left wheels.

Photographs of the scene of the collision, certified to us, clearly show rather heavy foliage on either side of the highway which would render it practically impossible for plaintiff to see the position of the truck with reference to the center line until the two vehicles were from 200 to 400 feet apart. A photograph showing tire marks and the testimony of five witnesses regarding the marks tend to corroborate plaintiff's claim the collision occurred well over on his side of the highway.

Plaintiff further testifies he was traveling 40 miles an hour when he started up the curve on the hill. Defendant Owens says plaintiff was not speeding. As soon as plaintiff discovered the truck straddling the center line he testifies he not only turned as far to the right as the presence of the guardrail permitted but he slowed down and watched the truck. "I knew I couldn't make it to the end of the guardrail so I slowed down. I was over as far as I could get and there I was. I was frightened."

Under this record it would be a grave injustice to hold as a matter of law plaintiff failed to exercise ordinary care in keeping a proper lookout. The jury could correctly find plaintiff was vigilant in maintaining a lookout. Equally without merit is the contention plaintiff was contributorily negligent as a matter of law in failing to operate his car so as to avoid the collision. The argument that plaintiff should have stopped his car

or further reduced its speed is proper jury argument but there is no rule of law which necessarily required plaintiff to do either. Young v. Jacobsen Brothers, 219 Iowa 483, 486, 258 N.W. 104; Jordan v. Schantz, 220 Iowa 1251, 1256, 264 N.W. 259, 261; Johnston v. Calvin, 232 Iowa 531, 534, 535, 5 N.W.2d 840, 842; Coon v. Rieke, 232 Iowa 859, 864, 6 N.W.2d 309, 311 ("The duty of drivers approaching from opposite directions is not to stop but to * * * yield one half of the traveled way.").

Further, there is no assurance the collision would not have occurred if plaintiff had stopped his car or further reduced its speed. To have done so would not have changed the course of the truck. Thus it cannot be said as a matter of law plaintiff's conduct in these two respects contributed directly to the collision. See cases last above.

Defendants make much of one answer of plaintiff on cross-examination that the front end of his car collided with some part of the trailer. This answer should be considered with the rest of plaintiff's testimony and the entire record. Photographs of the car plainly show no damage to the front end of the automobile except to the extreme left end. Damage was mainly on the front part of the left side—from the rear door forward. The finding is warranted that the left front of the car collided with the left side of the trailer near its rear. Also that defendant Owens, after getting well over onto plaintiff's side of the highway, abruptly turned the tractor to its right in a belated but futile attempt to give plaintiff his half of the roadway and this caused the left rear of the trailer to collide with plaintiff's car.

This from Smith v. Darling & Co., supra, 244 Iowa 133, 142, 56 N.W.2d 47, 52, has some application here: "But we think it is not fatal to plaintiff's case that the exact position of the two vehicles or the exact manner in which they collided is not shown provided there is substantial evidence the collision occurred on decedent's side of the highway.

"* * * 'The crux of the case is, Which vehicle was on the wrong side of the road at the time of impact?' "

In considering the issue of plaintiff's freedom from contributory negligence it is well to keep in mind he had the right to assume, until he knew or in the exercise of ordinary care should have known otherwise, that Owens would yield to plain-

tiff his half of the roadway. Ordinarily a motorist may indulge this assumption so long as there is still time for the approaching motorist to safely turn onto his proper side of the road. Owens was required by statute to have the truck to his right of the center line only when meeting another traveler going in the opposite direction.

In support of what we have just said see Young v. Jacobsen Brothers, supra, 219 Iowa 483, 486, 258 N.W. 104; Jordan v. Schantz, supra, 220 Iowa 1251, 1256, 264 N.W. 259, 261; Jakeway v. Allen, 226 Iowa 13, 19, 282 N.W. 374; Anderson v. Kist, 229 Iowa 462, 468, 294 N.W. 726; Johnston v. Calvin, supra, 232 Iowa 531, 534, 535, 5 N.W.2d 840, 842; Coon v. Rieke, supra, 232 Iowa 859, 864, 6 N.W.2d 309, 311. See also 2 Blashfield Cyc. Automobile Law and Practice, section 919, page 92 et seq.; 60 C. J. S., Motor Vehicles, section 317. These authorities also fully support our conclusion the issue of plaintiff's freedom from contributory negligence was for the jury.

II. Error is assigned in the admission of testimony of the witness Shafer that skid marks appeared to him to lead to the point of impact and testimony of the witness Orr that the Swift truck made the skid marks. We find no reversible error in the receipt of this evidence. In the first place, the record bearing upon these assigned errors is unsatisfactory from defendants' standpoint.

Witnesses Shafer, Orr and Foster came from the south upon the scene of the collision very soon after it occurred. Shafer identified, as a true representation of what he saw, Exhibit 22, a large photograph of the highway at and near the place of collision. It shows what appear to be skid marks made by dual wheels leading from the east lane of the highway well over into the west lane. Shafer described broken glass on the left side of the Chevrolet and the tire marks he saw and placed an "X" on Exhibit 22 at the approximate location of plaintiff's car as he observed it at the west edge of the pavement. It is without dispute the Chevrolet moved only a short distance after the collision. Defendant Owens testifies it traveled 10 to 15 feet after the impact—"maybe 20 feet." The "X" on Exhibit 22 is very close to the same location as an "X" on another photograph, Ex-

hibit 21, placed there by plaintiff to indicate the point of collision.

Immediately after Shafer had placed the "X" on Exhibit 22, this occurred:

"Q. Did the skid marks appear to you to lead to the point of impact? A. Yes, it did.

"Mr. Hale: Objected to as calling for an opinion and conclusion and no showing the marks were made by our vehicle.

"Mr. Riley: And we move to strike the answer because we did not have time to object.

"The court: Objection overruled."

This is one of two rulings upon evidence assigned as error. It will be noticed no objection was interposed until after the question was answered and there is no showing there was not time to object except an assertion in the motion to strike the answer. The court may have overruled the objection because he felt it was not timely made. There was no ruling on the motion to strike nor was a ruling requested. Ordinarily an objection to an interrogatory must be made before the answer is given unless it appears there was insufficient opportunity to then make the objection. See Jackson v. Chicago, M., St. P. & P. R. Co., 238 Iowa 1253, 1262, 1263, 30 N.W.2d 97, 102, and citations; Kuiken v. Garrett, 243 Iowa 785, 804, 51 N.W.2d 149, 160, and citations.

Aside from what we have just said, we think the ruling was not reversible error. The jury could reasonably infer the tire marks were made by the truck. Indeed, as we shall presently see, there is positive testimony to that effect elicited by defendants. It is true, as stated, no one saw the collision except the two motorists. But Shafer saw what appeared to him to be the point of impact and identified its approximate location. It was not an unallowable opinion or conclusion for him to testify the skid marks *appeared to him* to lead to that point. Essentially the witness testified to a matter of observation. That was a fact. If there was any conclusion or opinion involved in the answer, it was only such as usually inheres in testimony describing observations. See Alaga Coach Line v. McCarroll, 227 Ala. 686, 151 So. 834, 92 A. L. R. 470, and annotation 475; Smith v. Keyes, 103 Ind. App. 487, 9 N.E.2d 119, 121; Hoffer v. Burd, 78 N.D. 278, 285,

49 N.W.2d 282, 286, 287. In re Estate of Scanlan, 246 Iowa 52, 55, 67 N.W.2d 5, 6, 7, points out there is no definite line between fact and opinion.

It seems to be well settled that testimony descriptive of skid marks at the scene of a collision is admissible, especially on the question of the location of the vehicles with respect to the center of the highway, where as here it may be reasonably inferred the marks were made by one of the vehicles. See Hackman v. Beckwith, 245 Iowa 791, 804, 805, 64 N.W.2d 275, 283, and citations; Harness v. Tehel, 221 Iowa 403, 406, 263 N.W. 843; Cahill v. Bradford, 172 Ark. 69, 287 S.W. 595; McKee v. Chase, 73 Idaho 491, 499, 500, 253 P.2d 787, 791, 792; Williams v. Graff, 194 Md. 516, 71 A.2d 450, 23 A. L. R.2d 106, and annotation 112, 127; Hoffer v. Burd, supra, 78 N. D. 278, 285, 49 N.W.2d 282, 286, 287 (where a witness who did not see the collision was asked if he was able to observe the wheel marks from the Burd automobile leading up to the point of the accident); 61 C. J. S., Motor Vehicles, section 516n(2), page 262; 5 Am. Jur., Automobiles, section 633.

Further, we think the answer of witness Shafer to which defendants objected was not sufficiently prejudicial to warrant a reversal. The jury doubtless understood Shafer was not fixing the point of impact by reason of having seen the collision but from his observations soon afterwards. The answer told the jury nothing that was not shown by the photographs, Exhibits 21 and 22, which were identified by five witnesses as true representations of what they saw at the scene of the accident, and by a good deal of testimony to which no objection was made.

Witness Foster testified it appeared to him the skid marks came to the point of impact and then rolled away. Deputy Sheriff Tibbets said "There was glass on the north side of the road, next to where the point of impact would have been." Plaintiff's son testified he measured the skid marks, starting "opposite the scene of the impact" and made a sketch "showing where they run completely to the other side of the pavement at the point of impact." The son also said on cross-examination by defendants, "I could tell by the skid marks where the point of impact was

\* \* \*. \* \* \* I think it was the abrupt stopping place immediately opposite where my father's car was after the accident."

Our conclusion that Shafer's answer was not sufficiently prejudicial to call for a reversal finds support in Lewis v. Farmers Grain Co., 214 Iowa 143, 146, 241 N.W. 469, and citation; Parks v. City of Des Moines, 195 Iowa 972, 980, 981, 191 N.W. 728; Lamson Bros. & Co. v. Mensen, 187 Iowa 972, 979, 174 N.W. 688; State v. Scott, 221 La. 643, 60 So.2d 71; Danner v. Walters, 154 Neb. 506, 48 N.W.2d 635, 641; 5 C. J. S., Appeal and Error, section 1724c(3), pages 974–977; 3 Am. Jur., Appeal and Error, section 1028.

III.   We set out a portion of defendants' cross-examination of plaintiff's witness Orr who accompanied Shafer and Foster to the scene of the collision:

"Q.   Do you know whether any one of a large number of trucks might have made those skid marks? A. Yes I do.

"Q.   Do you know that none of the [other] trucks that went by there made any skid marks? A. They never made those skid marks.

"Q.   How do you know that? \* \* \* A.   The truck made skid marks and then rolled on down and was sitting in the middle of the road. We directed him to drive it on his own side and park it and the same color led right up to the skid marks.

"Mr. Hale: Move to strike that part of the answer to which truck made the skid marks as an opinion.

"The court: The answer will stand."

This ruling on evidence is the remaining one of which defendants complain. It entitles them to no relief here. Presumably the motion to strike referred to a portion of the last answer, not to the preceding one which remained in the record without objection. Lewis v. Farmers Grain Co., supra, 214 Iowa 143, 146, 241 N.W. 469; Nehring v. Smith, 243 Iowa 225, 232, 49 N.W.2d 831, 835.

The last answer was elicited by the question asked. There has been no claim the answer was not responsive to the question. If it be assumed part of the answer is an opinion it is one the question called for. Obviously defendants cannot complain of testimony thus elicited by their counsel. Glatstein v. Grund,

243 Iowa 541, 549, 552, 51 N.W.2d 162, 168, 169, 36 A.L.R.2d 531.

IV. Finally it is contended the verdict for $26,662 is so excessive as to indicate it was the result of passion and prejudice of the jury. The argument in support of this contention is short and no authorities are cited. While the verdict is large we think we are not justified in disturbing it.

Ordinarily a verdict should not be disturbed because of its size unless it is so flagrantly excessive as to shock the conscience or raise a presumption it was the result of passion, prejudice or undue influence. Each case must turn upon its own facts. See Thornbury v. Maley, 242 Iowa 70, 80, 45 N.W.2d 576, 582; Glatstein v. Grund, supra, 243 Iowa 541, 557, 51 N.W.2d 162, 172, 36 A. L. R.2d 531; Elings v. Ted McGrevey, Inc., 243 Iowa 815, 821, 53 N.W.2d 882, 886; Gatewood v. Cooper, 245 Iowa 1281, 1295, 66 N.W.2d 472, 479. See also Hackman v. Beckwith, supra, 245 Iowa 791, 807, 64 N.W.2d 275, 285; Jettre v. Healy, 245 Iowa 294, 302, 60 N.W.2d 541, 546.

Many recent decisions point out that in considering the size of a verdict account should be taken of the greatly reduced purchasing and earning power of the dollar. Glatstein v. Grund, supra, and citations at page 558 of 243 Iowa, page 173 of 51 N.W.2d, page 546 of 36 A. L. R.2d; Waterloo Savings Bank v. Waterloo, C. F. & N. R., 244 Iowa 1364, 1376, 60 N.W.2d 572, 579; also citations last above.

Plaintiff suffered a severe crushing injury to his chest, with multiple fractures of nine ribs and his left arm. His left lung was filled with blood and collapsed. He hovered between life and death at least a week. He was in the hospital 64 days. His left arm was "in traction" over 40 days. Plaintiff was unable to return even to light work for his employer, Sheaffer Pen Company, until four months and 13 days after he was injured. His hospital and medical bills totaled $1892. (Plaintiff's wife helped care for him constantly, day and night, while he was in the hospital.) Stipulated damage to plaintiff's car was $1000 plus $20 towing expense.

According to his doctor, plaintiff has a fifty per cent disability to his left shoulder and serious injury to his heart, lungs and vessels that is permanent and probably progressive in character. Plaintiff's ability to continue work in the next ten years

is impaired, probably as much as fifty per cent. His doctor says plaintiff's life expectancy is reduced and he will be required to take digitalis the rest of his life. Plaintiff is unable to do the work around the home he did before he was injured and gets much less enjoyment from life. He has suffered intense pain from his injuries and there will probably be future pain.

Defendants admit in argument, "There is no doubt plaintiff sustained severe injuries, some of which are permanent, resulting in partial disability, the exact extent of which is not known." In overruling defendants' motion for new trial which raised the claim of an excessive verdict, the trial court observed "there is a very strong showing to support not only defendants' liability, but also the amount of damages allowed."

Plaintiff was 56 when injured. The normal life expectancy at that age is shown to be about 17 years. Because it appears the retirement age at Sheaffer Pen Company is 65 defendants argue plaintiff's "work expectancy" was but nine years. The argument assumes plaintiff, if he had not been injured, would be unable to obtain work anywhere but Sheaffer's. We cannot agree a man necessarily becomes unfit for gainful employment at 65 merely because that is the current retirement age imposed by his present employer.

Defendants also call attention to the fact plaintiff receives the same hourly wage as before he was injured. However, plaintiff's superior at Sheaffer's testifies in effect that plaintiff is unable to do any heavy work and unless he improves materially the witness could not recommend any advancement for him. Apparently Sheaffer continues to employ plaintiff in light work at the hourly wage he received before he was injured partly in appreciation of prior faithful service.—Affirmed.

All JUSTICES concur.