STATE OF IOWA, Appellee, v. LENNIS WRIGHT, Appellant.

**HUSBAND AND WIFE:** Failure to Support—Separate Estate of Wife
1 —Instructions. An instruction that a husband may, under Sec. 13230, Code of 1924, be criminally liable for failure to support his wife even though "she has an estate of her own" is prejudicially confusing when not coupled with any explanation as to what would constitute, under said statute, a "destitute condition" on the part of the wife.

**TRIAL:** Instructions—Nonapplicability to Evidence. An instruction to
2 the effect that a husband would not be guilty of failure to support his wife if he *procured* a home at a named place, and if the wife, without good cause, refused to live at said place, is erroneous when the applicable evidence was solely to the effect that the husband *offered to procure* such home and that the wife refused such *offer.*

**TRIAL:** Instructions—Nonsupporting Evidence. Instructions which
3 permit a finding without supporting evidence are necessarily erroneous.

**Headnote 1:** 17 C. J. p. 340; 30 C. J. p. 1111. **Headnote 2:** 30 C. J. p. 1112. **Headnote 3:** 16 C. J. p. 1043.

*Appeal from Lee District Court.*—JOHN E. CRAIG, Judge.

OCTOBER 20, 1925.

THE indictment against the defendant charged him with the willful desertion of his wife and child without good cause, and in violation of Section 4775-a, Code Supplement, 1913. There was a verdict of guilty, and judgment entered thereon, committing the defendant to the penitentiary for the term of one year. The defendant appeals.—*Reversed.*

*McCoid & McCoid,* for appellant.

*R. N. Johnson* and *C. C. Martin,* for appellee.

EVANS, J.—The defendant and the prosecuting witness were married on February 5, 1923. Their child was born on July 10, 1923. At the time of their marriage, the defendant was a young man who made his home with his mother. She was engaged in keeping a restaurant, and he assisted her more or less in and about such enterprise. He does not appear to have had any other occupation up to the time of his marriage. After their marriage, the young couple occupied rooms appurtenant to the mother's restaurant. This was located at New London, Iowa. This arrangement was not a comfortable one, and was not satisfactory to the wife. The wife's mother, Mrs. Lempke, lived at Fort Madison, and the young couple visited her there not infrequently. On June 3d, the defendant took his wife to her mother's home in Fort Madison, upon the mother's request. Preceding this visit, the wife had been ill for a couple of weeks. She went to her mother's to remain there until after the birth of her child. While at Fort Madison, the defendant engaged her physician, who thereafter gave her weekly attention and advice and attended her at the childbirth on July 10th. In the meantime the defendant had obtained employment as a laborer in the railroad shops at Burlington. He visited his wife periodically at her mother's home. He was not present at the time of the birth of the child, but came to his wife's bedside immediately afterwards, and remained until July 14th. On the latter date he returned to Burlington, with the avowed purpose of collecting his wages and returning and making arrangements for their future home. He never returned. The wages collected amounted to $40, out of which he paid bills amounting to $26 or $27. He then took his departure for the west, where he engaged in odd jobs of labor, including work in the harvest fields of Kansas. In his travel he paid no railroad fares, but "bummed" his way upon railroad trains. He has never since contributed anything to the support of his wife or child. The wife, who is the prosecuting witness, remained at the home of her mother, and is engaged by her mother in the enterprise of running a rooming house. The evidence discloses without dispute that the defendant is a young man of no financial means and of little earning capacity, and of little ballast of character or personality. In short, he is shiftless and inefficient, and this is the root of his

undoing and of his wrongdoing. The consideration of these facts is important to a proper application of the statute to the case in hand. In the enforcement of such statute, the essential purpose of which is commendable, we must be guarded lest unwittingly we revive thereby the law of imprisonment for debt. The guilt of the defendant is predicated upon the destitute condition of his dependents. If he himself be destitute, even though it be the result of his own inefficiency, the circumstance bears materially upon the element of *willfulness*.

With these preliminary observations in mind, we pass to a consideration of some of the instructions given on the trial.

I. In Instruction 5, the following appears:

"* * * and it will not relieve the husband from the obligation of supporting his wife and the maintenance and care of his

1. HUSBAND AND WIFE: failure to support: separate estate of wife: instructions.

infant child that some friend or relative has opened their door and given them shelter, nor *that she has an estate of her own,* or that she can be cared for by her father or mother.''

As an abstract statement of the legal obligation resting upon the husband for the support of the wife, the foregoing might be accepted as substantially correct. But in its application to this prosecution, it was necessarily misleading, and did not furnish a proper ground upon which to predicate criminal guilt. Granted that a husband owes support to his wife even though ''she has an estate of her own,'' it does not follow by any means that a deserted wife is *destitute,* within the meaning of the criminal statute, if ''she has an estate of her own.'' The instruction at this point lost sight of the scope of the criminal statute, and introduced a phase of obligation of the husband which was not pertinent to the prosecution. Its necessary effect was to mislead the jury as to the criterion of criminal liability.

II. The defendant testified as a witness that he had informed his wife that he was unwilling to live at Fort Madison, but that he would rent a house either in New London or in

2. TRIAL: instructions: non-applicability to evidence.

Ottumwa, Iowa, and that she informed him in reply that she would not live in either of such places. With reference to this feature of the record, the court gave Instruction 8, as follows:

''8. The jury are instructed that the husband has the right

to select his domicile and to change his residence, and it is the duty of the wife to accompany him, and if she refuses without some good and justifiable cause, as explained in these instructions, he will not be guilty of desertion; and in this case, if you find from the evidence that the defendant provided a home suitable to their circumstances in life, *either in New London or Ottumwa, Iowa,* and you further find that his wife refused to go to either place without good cause for such refusal, then, in that case, he would not be found guilty of desertion."

There was no basis in the record for the instruction in the form in which it was given. The defendant did not testify that he had provided a home either in New London or in Ottumwa. He testified only that he offered to do so, and that the offer was repulsed. The implication of this instruction was that it was essential that the defendant should have actually provided a home in advance of his offer, in order to get any benefit from this circumstance.

III. In Instruction 10 the court laid down the following condition as a hypothesis tending to show guilt:

"If you find from the evidence beyond a reasonable doubt that the defendant willfully brought his wife to Fort Madison and left her there with the intention of abandoning her, and that he left her there with no means of support, and did not provide her with the necessary food and clothing for herself and child; * * *"

3. TRIAL: instructions: non-supporting evidence.

We find no evidence in the record in support of the foregoing hypothesis. There is no evidence tending to prove an intention of the defendant to abandon his wife at the time he brought her to Fort Madison. In the brief for the State the evidence at this point is summarized as follows:

"* * * Here they resided until early in the month of June, when defendant took his wife to the residence of her mother in the city of Fort Madison. The prosecutrix at this time was in delicate condition, and the defendant consulted a doctor at Fort Madison, and left his wife at her mother's house in the city, to be treated by the doctor. * * * Defendant was not present at the birth of the child, although he had taken her to her mother's home because, under the circumstances and in the condition she

was in, he thought she needed her mother's care, and he took her home so that her mother could care for her.''

IV. The errors pointed out in the foregoing necessitate a reversal of the case. Without going into any detail of further discussion, we deem it our duty, however, to call attention to certain rulings of the court on the cross-examination of the prosecuting witness. This cross-examination was directed to the conduct of the witness herself, in relation to other men, during the time intervening between the alleged desertion and the finding of the indictment. We think the cross-examination was unduly restricted, and that the general scope of the offered cross-examination was proper.

The judgment below must be reversed.—*Reversed.*

FAVILLE, C. J., and ALBERT and MORLING, JJ., concur.