SAMUEL BAIRD, Appellee, v. MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY, Defendant; W. H. BREMNER, Receiver, Appellant.

No. 40417.

JUNE 24, 1932.

E. R. Hicklin, E. S. Simpson, and Arthur Springer, for appellee.

Devitt, Eichhorn & Devitt and H. O. Weaver, for appellant.

GRIMM, J.—The defendant railway company has been in the hands of a receiver for a considerable period of time and was so in receivership on the 11th day of January, 1927. The line of railway in question passed through Louisa County and at the particular point under consideration ran in a substantially east and west direction. Lying north of the line of railway was a piece of land owned by the plaintiff which in the previous year had produced a crop of oats and was seeded with clover and timothy. There is a grade in that portion of the railway company line south of the property of the plaintiff.

On January 11, 1927, a few minutes after a train passed by, a fire was discovered on plaintiff's land. The wind was blowing in a northerly direction. The farm in question is located a very short distance easterly of the town of Newport. A freight train headed west and a passenger train headed east passed at the station of Newport, about two o'clock in the afternoon of said January 11th. A witness was standing close to defendant's track in Newport when the passenger train came along. He observed cinders being thrown out of the smokestack of the engine. The fire started fifteen or twenty minutes after this train passed. This fire was extinguished in the afternoon, but later, towards midnight, what is claimed by the defendant to have been a new fire and by the plaintiff to have been a rekindling from smouldering of the first fire, burned over an additional area. Approximately forty acres, in all, were burned over. It appears that a few acres of this land had recently been treated with a heavy coating of manure.

The land is gently rolling. In the season following, the entire field, of which the forty acres constituted approximately

one-half, was used partly as a hay meadow, and from a portion of it, the timothy and clover were cut for seed.

Numerous errors are relied upon for reversal, one only of which we will consider.

I. Numerous questions were asked by the plaintiff, to which appropriate objections were made and overruled, and motions to strike the answers were overruled, which questions are illustrated by the following:

"Q. How much clover seed to the acre would have been realized from that part which was burned over if you had thrashed it?"

"Q. How much timothy seed to the acre would have been realized from the burned-over part of this field if you had thrashed it?"

An estimate was given to all such questions. This was followed by testimony tending to show the value of timothy seed and clover seed. There was evidence in the record tending to show that the timothy and clover from only a portion of the unburned area was thrashed, the reason given being that the owner wanted the hay and not the seed. One of the witnesses testified as follows:

"We only thrashed fifteen or twenty acres of the unburned portion; fifteen or twenty acres that did not burn over, we did not thrash."

Another witness testified:

"The reason we did not thrash the whole piece that was not burned was because we wanted the hay and not the seed. We wanted twenty acres thrashed and no more, and that is what we thrashed."

To this testimony, there is no contradiction. Manifestly, then, the failure to thrash from the burned portions was not because of its condition by reason of the fire, but for other reasons having to do with the operation of the farm. The record shows that while the plaintiff owned scales which were available and for use, no effort was made to accurately ascertain the amount of seed or the tonnage of hay procured from any portion of either the burned or unburned parts of the tract of land.

It is the contention of the appellant that by the introduction of this testimony, illustrated by the questions quoted above, the jury were led into the field of speculation and conjecture and away from the true rule of the measure of damages in cases of this kind.

It is not claimed by the plaintiff that the fire totally destroyed the grass crop of any portion of said land. The true measure of damages in such cases is the difference in the value of the meadow land immediately before the injury and the value of such tract immediately after the injury. Manifestly, many facts and circumstances may be shown in evidence in order to enable the jury to properly fix the damages in such case. Moreover, it is apparent that an approximation is all that can be made by the jury. See Randell v. Iowa State Highway Commission, 214 Iowa 1. There is in the petition in this case no claim for special damages. Such being the fact, upon what theory can the introduction of the testimony elicited by the questions hereinbefore quoted be pertinent and proper? These questions led the jury into the field of speculation and conjecture.

Assuming that the witnesses who answered these questions were expert and fairly answered the questions, the answers might be entirely misleading. The number of bushels of clover seed produced from a certain area of land depends upon many facts and circumstances. Besides, the only question before the jury in this case was the damage which the fire did to the land, if any. The only question before the jury was the *value of the land before and after the fire.* The clover and timothy crop might have been a total failure without any relation whatever to the fire. It might have been a failure because of drouth or because of scarcity of snow, followed by severe freezing weather.

Other facts and circumstances might have a determining bearing on the number of bushels of clover and timothy thrashed from this particular area.

As previously noted, the hay and clover from the burned portions was not thrashed, not because of its condition as a result of the fire, but for reasons growing out of the operation of the farm as a whole.

The parties have not cited any cases showing that this court has definitely passed upon this particular question. By analogy,

however, condemnation cases are important. As there was not a total destruction of the meadow, the rule of damages is the same here as in condemnation cases, to wit, the value of the property before and after the event.

In the recent case of Kosters v. Sioux County, 195 Iowa 214, the trial court, in its instructions, gave the correct rule for the measure of damages, but in the trial of the case, witnesses were permitted, over objections, to give an estimate of the cost of widening a certain cattle pass, and this court said:

"In determining the amount of damages, it was proper for the jury to take into consideration all pertinent facts pertaining to the condition of the farm before and after the construction of the road. The award of damages is not to be made, however, by the assessment of a series of specific items. In Henry v. Dubuque & P. R. Co., 2 Iowa 288, we held that the owner of premises taken should not be allowed for 'a fence as fence' in the assessment of damages. * * * And so in the instant case, the appellee could not recover the sum total of various specific items, such as the cost of fence, the cost of a passageway, and other similar items. The damage is to the farm as a whole, and must be awarded in a lump sum. The court properly instructed the jury in regard to the true measure of damages. * * * The appellant's motion to strike the answer on the ground that it was not the proper measure of damages should have been sustained."

In Randell v. Iowa State Highway Commission, 214 Iowa 1, this court, in commenting upon the introduction of evidence in reference to the cost of a "hypothetical fence" said:

"Therefore, the evidence of the cost of the hypothetical fence is not admissible, as shown by Dean v. State, (211 Iowa 143), supra; Welton v. Iowa State Highway Commission, (211 Iowa 625), supra; Chicago, Northwestern Railway Co. v. Drainage District No. 5, Sac County, 142 Iowa 607; Hanrahan v. Fox, 47 Iowa 102; Kennedy v. Dubuque & Pacific Railway Co., 2 Iowa (Clarke) 521; Henry v. Dubuque & Pacific Railway Co., 2 Iowa (Clarke) 288."

Other cases were cited, including Kosters v. Sioux County, 195 Iowa 214. In the case of Welton v. Iowa State Highway

616

Commission, 211 Iowa 625, this court, in speaking of this kind of testimony, said:

"This again allowed the jury to enter the realm of speculation and conjecture. Fences are of various kinds and costs and may or may not be needed, according to conditions."

The court failed to warn the jury not to take into account any of these items made up of alleged lost bushels at so much per bushel.

In Dean v. State, 211 Iowa 143, when this court had under consideration testimony in reference to the cost of fencing, etc., it was said:

"* * * the fact-finding body would surely get the idea that they were to add the fence expense to the other items of damages disclosed by the evidence."

In the same way, the fact-finding body in this case "would surely get the idea" that the items made up from the loss of clover seed and timothy seed should be added as an element in the damages.

The introduction of this testimony was prejudicial error.

The cause is—Reversed and remanded.

ALBERT, KINDIG, DE GRAFF, and FAVILLE, JJ., concur.

WAGNER, C. J., and EVANS, J., consider themselves disqualified and do not participate.