IN RE GUARDIANSHIP OF DAN LYONS.

DAN LYONS, voluntary ward, Appellant, v. DAN SHERIDAN, voluntary guardian, Appellee.

No. 47251.

(Reported in 33 N. W. 2d 423.)

AUGUST 2, 1948.

R. J. Sullivan, of New Hampton, and E. P. Shea, of Decorah, for appellant.

E. B. Wilkins and Clemens J. Smith, both of New Hampton, for appellee.

WENNERSTRUM, J.—This appeal has developed by reason of an action brought in the guardianship proceedings of Dan Lyons wherein he sought to set aside and vacate an order of the district court of Chickasaw county appointing a guardian for

his property. Thereafter the issues raised by the pleadings filed in this action were brought to trial. The court heard the evidence presented and later filed findings of fact, conclusions of law and a judgment and decree wherein it held that the petition to vacate the order of appointment of a guardian should be denied. Dan Lyons has appealed from this decision.

The ward, Dan Lyons, is eighty years of age. He is a resident of Chickasaw county and lives on a two-hundred-acre farm with his sister, Katie Lyons, who is seventy-five years of age. She has never married and the record does not show that Dan Lyons was ever married. Dan Sheridan, who was appointed guardian of Dan Lyons and Katie Lyons on April 9, 1947, resides approximately one mile from the Lyons farm. He, Joe Sheridan and John Sheridan are nephews of the ward. They and Andrew Lensing, a brother-in-law of the Sheridans, all reside in the same neighborhood. The record discloses that on January 27, 1947 Dan Sheridan, John Sheridan and Andrew Lensing went to the office of E. P. Shea, an attorney of Decorah, and there discussed with him the matter of the apparent necessity for the appointment of a guardian for Dan Lyons. It is shown that at that time E. P. Shea discussed the matter of the appointment of a guardian for Lyons by virtue of a voluntary proceeding and told the parties who were consulting with him that he would call upon Dan Lyons within a few days and thereafter report to them. Mr. Shea is one of the attorneys representing the appellant in this present action now before us on appeal. These parties who had conferred with Mr. Shea did not hear anything from him and on or about April 1, 1947 Dan Sheridan and Andrew Lensing went to the office of E. P. Donohue, an attorney at New Hampton and consulted with him in regard to the appointment of a guardian for the property of Dan Lyons. The evidence shows that Mr. Donohue advised them that they could bring an involuntary action for the appointment of a guardian and thereafter have a hearing in court or that Dan Lyons could make a voluntary petition for the appointment of a guardian. On April 4, 1947, Mr. Donohue prepared a petition wherein Dan Sheridan and Andrew Lensing were named as plaintiffs and Dan Lyons was

named as defendant and wherein the plaintiffs petitioned for the appointment of a guardian. An original notice was also prepared to be served upon Dan Lyons relative to this proposed action. The petition was signed by Dan Sheridan and Andrew Lensing. After these papers had been prepared, George Murray, sheriff of Chickasaw county, was called to the office of Attorney Donohue. At that time there was a discussion as to the possibility that Dan Lyons and his sister might petition for the appointment of a guardian in a voluntary proceeding. Following this conference it was decided that a petition for the voluntary appointment of a guardian for Dan Lyons and Katie Lyons should be prepared and submitted to them for their signature by Murray, the sheriff. He had known them for approximately seventeen years.

On this date, April 4, 1947, Murray started for the home of Dan and Katie Lyons. En route to the farm he saw Dan Lyons who somehow had driven his car off the road into a ditch. The car, with the aid of a tractor, was placed back on the road and Lyons proceeded to his farm. Sheriff Murray arrived at the farm shortly thereafter and visited with Dan and Katie Lyons. It is shown by the record that he discussed with them the matter of the service of the notice relative to the involuntary petition for the appointment of a guardian and also discussed with them the appointment of a guardian under a voluntary proceeding. It is the claim of the petitioner, Dan Lyons, that by reason of his disturbed state of mind on account of having driven his car off the road and the attitude and actions of the sheriff at his home he signed the voluntary petition for the appointment of a guardian.

This petition which was signed at that time by both Dan Lyons and Katie Lyons was not verified and the sheriff informed them that they should come to New Hampton where this part of the petition could be completed. There was some comment as to their inability to climb the stairs to the second-floor office of Mr. Donohue and the sheriff suggested that they come to his office. On the following Monday, April 7, 1947, Dan Lyons and Katie Lyons accompanied Dan Sheridan and Mrs. Dan Sheridan to New Hampton and went to the sheriff's office. Mr. Donohue was called and he spent approximately an

hour and a half there visiting and discussing with Katie and Dan Lyons the question of their wishes regarding the appointment of a guardian. The evidence discloses that in that conversation inquiry was made whether or not there was any objection to Dan Sheridan acting as their guardian. It is shown that these parties told Mr. Donohue that they were willing to sign the voluntary petition, which they did at that time. Exhibit 1 is a joint petition of Dan Lyons and Katie Lyons for the appointment of a voluntary guardian. It had been signed by both of them on the previous Friday at the farm but it had not been verified. Exhibit 2 which is a petition of a similar nature was signed in the sheriff's office in New Hampton on Monday, April 7, 1947, by both Dan Lyons and Katie Lyons at the place on the petition for the signature of the petitioners and also following the verification statement. The verification was subscribed and sworn to before E. P. Donohue, notary public. The petition, Exhibit 2, was filed with the clerk of the district court as a joint action, but separate accounting proceedings were set up. The clerk, on the instructions of Mr. Donohue, the attorney, filed the petition, Exhibit 2, in the Katie Lyons guardianship. Exhibit 1 was not signed at the place noted for the verification but this was filled in by someone in the office of Mr. Donohue and was filed in the Dan Lyons guardianship proceeding. Some question has been raised as to the failure to have Exhibit 1 properly verified but there is no question as to the proper verification of Exhibit 2. It is perhaps advisable to state that the petition for the appointment of a guardian in the involuntary proceeding was not filed in the clerk's office.

In the hearing before the trial court Dan Lyons was asked whether or not Sheriff Murray had misrepresented anything to him when he signed the petition for a voluntary guardian at the farm and he answered in the negative. He was also asked whether or not he could tell of any statements that were made in the sheriff's office to him by Mr. Donohue, Dan Sheridan or Mrs. Dan Sheridan when he signed Exhibit 2 and his reply was in the negative.

It is also shown by the evidence that there was some discussion relative to the use of the automobile by Dan Lyons

prior to the time that he signed the application for a voluntary guardianship in the sheriff's office. Mr. Donohue testified that Mr. Murray, the sheriff, had told him of the automobile incident and that he instructed the sheriff to get the keys and to inform the state. He also testified that he stated if Dan Lyons passed a driver's test everything would be all right but if he did not pass it that would be decisive of the situation as to the use of the car. It is also disclosed by Mr. Donohue's testimony that he overheard George Murray, the sheriff, tell Dan Lyons to leave the car alone and not to drive it.

The petition for setting aside the order appointing a guardian for Dan Lyons was filed on April 30, 1947. There was no application to set aside the appointment of a guardian for Katie Lyons.

There was other evidence presented to the effect that Dan Lyons had never conferred with Mr. Donohue concerning the appointment of a guardian; that the parties who did consult with Mr. Shea and Mr. Donohue had never discussed the matter of the appointment of a guardian with Dan Lyons and that he did not know one had been appointed until he **was** unable to transact business as he had previously done.

▉ 1. The appellant claims as an initial error on the part of the trial court its ruling in striking from the ward's petition to vacate the order for the appointment of a guardian, paragraphs 6, 7 and 8 thereof. Paragraph 6 states that the petitioner is a retired farmer and that he had leased the work land on his farm for the year 1947. Paragraph 7 alleges that the petitioner is well able and capable of taking care of his own property and that he does not care to have a guardian for his person or property and that no reason exists for one. Paragraph 8 states that the petitioner has conserved and protected his property for a long period of time, that his business affairs are in good shape, that he has not dissipated or squandered his holdings, that he is a sober, reliable and prudent man and well able to handle his own affairs. The trial court sustained this motion and held in its ruling that the proceedings as then before the court were not for the termination of the guardianship under the provisions of sections 670.11, 670.12, 670.13,

1946. Code of Iowa. It held that the question presented by the petition was whether the claimed voluntary application had been obtained by duress, deceit, undue influence or false and fraudulent misrepresentations. We hold that the ruling made by the trial court was correct and that there was no error in striking the portions of the petition to which reference has been made. It is our conclusion that the only question presented for consideration was, as stated by the trial court, whether there had been duress and fraudulent misrepresentations made to Dan Lyons in obtaining his signature to the petition for a voluntary guardianship.

■ II. It was stipulated by the parties, prior to the introduction of the evidence, that the hearing and proceeding then to be had before the trial court should be governed and carried on under the provisions of Rule 252, Rules of Civil Procedure, which pertains to the manner in which judgments may be vacated or modified. It was also stipulated that these proceedings should also be subject to the provisions of Rule 253, Rules of Civil Procedure. Paragraph (c) (*Trial*) of this last-referred-to Rule provides in part that the "* * * form and manner of the trial shall be the same, as nearly as may be, as in the trial of an ordinary action to the court, and with the same right of appeal." The proceedings had before the trial court were in probate and triable as a law action. In re Estate of Jenkins, 201 Iowa 423, 426, 205 N. W. 772.

Inasmuch as this matter was triable as a law action to the court its finding on the issues presented is conclusive and binding on us the same as would be a verdict of a jury if supported by substantial evidence. See Arent v. Arent, 239 Iowa 737, 740, 32 N. W. 2d 660, 661, and cases cited.

■ III. It is one of the claims of the appellant that the petition for the appointment of a guardian filed in the Dan Lyons proceeding had not been verified. This refers to Exhibit 1, to which reference has previously been made. There is no contention that Exhibit 1 had been verified. It was filed as a copy. Exhibit 2 was verified. The trial court held that Exhibit 2 had been properly verified and that the docketing of the guardianships separately did not affect the validity of the order appointing a guardian based on the joint request for

appointment, as shown by Exhibit 2. The proposition raised by the appellant in this division of his brief involves the question whether the obtaining of Dan Lyons' signature to the petition and verification, as shown by Exhibit 2, was the result of duress, fraud and misrepresentation. To establish fraud through misrepresentation, there must be proof, in addition to the false statements that the person, who is claimed to have been deceived or defrauded, acted in reliance upon the statements made. 23 Am. Jur., Fraud and Deceit, section 141. In order for appellant to have acted under duress he must have been under such fear as to "deprive him of the free exercise of his will." Guttenfelder v. Iebsen, 222 Iowa 1116, 1121, 270 N. W. 900, 903.

■ It is unnecessary to decide whether there is any evidence of fraud or duress. The trial court found they were not proven. There is evidence to support such finding. Certainly we cannot hold fraud or duress were conclusively established. This contention presents no ground for reversal.

■ IV. In the course of the examination of Dan Lyons he was asked the question: "Did you ever authorize Mr. Donohue to present a petition to the court to have a guardian appointed for you?" The witness, upon objections made by counsel for appellee, was not permitted to answer. Dan Lyons was further asked as a witness: "Did you ever want to have a guardian over your property?" An objection to this question was sustained by the trial court. Katie Lyons, as a witness for Dan Lyons, was asked the following question: "The question is this: Before Dan signed in the sheriff's office did he say anything at that time about wanting to go to Decorah?"

We are of the opinion that the trial court could have properly overruled these objections and permitted the witnesses to answer but it is our conclusion that the error, if any, is without prejudice to the appellant. Our examination of the entire record shows that these witnesses were interrogated quite thoroughly concerning the entire situation. The court had these witnesses before it and under all the circumstances and the record as made we do not feel that we would be justified in reversing this case and sending it back for a retrial because of these claimed errors.

976

■ V. It is a further contention of the appellant that the trial court did not take into consideration certain inferences and circumstances showing fraud and which if considered would have overcome the direct evidence of the witnesses. It is also the contention of the appellant that the cases of Womack v. Horsley, 178 Iowa 1079, 1087, 152 N. W. 65, and Johnson v. Carter, 143 Iowa 95, 120 N. W. 320, are applicable to the situation as presented in this case. The legal propositions therein set forth are good law as applied to certain circumstances and cases. However, we are here presented with the situation of a law action triable to the court wherein it made certain findings and conclusions of law. Then, too, there is no showing that the trial court did not consider the possible inferences to be drawn from the evidence. However, we do not believe that the inferences for which the appellant contends are of such a nature that we, as an appellate court, could say that they would justify us in setting aside the order and judgment of the trial court.

■ VI. It is the further claim of the appellant that there was a relationship of trust and confidence existing between the parties and that under such circumstances the record should be closely scrutinized. It is the claim that where there is evidence of trust and confidence this amounts to constructive fraud as alleged in the appellant's petition. We have examined the record as presented and we do not find that the evidence warrants a holding that there was present a relationship of trust and confidence such as to justify this court in placing the burden on Dan Sheridan of overcoming the presumption of undue influence and thereby result in the setting aside of the order entered by the trial court.

Upon a review of the record as presented we have concluded it sustains the trial court and that there are no grounds upon which we could and should reverse. We therefore affirm.— Affirmed.

All JUSTICES concur.