BERNARD PROKOP, appellee, v. JOSEPH C. HOUSER et al., appellants.

No. 48402.

(Reported in 62 N.W.2d 781)

FEBRUARY 9, 1954.

Bruce R. Clark, of Ida Grove, and Page & Nash, of Denison, for appellants.

Burton Parriott, of Remsen, and Shull & Marshall, of Sioux City, for appellee.

MULRONEY, J.—In this automobile-accident case the plaintiff-driver sustained injuries to his left arm in a sideswiping collision with a truck traveling in the opposite direction. The defendant Houser was the driver of the truck which was owned by the defendant Rath. Plaintiff's arm was protruding from the left side of his car at the time and the injuries were such as to necessitate an immediate amputation of his arm between the elbow and shoulder. Plaintiff recovered verdict and judgment and upon this appeal by defendants the only errors asserted have to do with the admission of a doctor's testimony concerning the extent of arm use which would be regained by the use of an artificial arm, and the refusal to give a requested instruction.

I.   In the course of the trial plaintiff's counsel interrogated the doctor who had performed the amputation as to how much arm use plaintiff would regain after an artificial arm "has gotten into operation and has reached its maximum efficiency." At first the trial court sustained objections such as "irrelevant and immaterial and incompetent, and the witness is incompe-

tent", but when the question was re-asked the court allowed the answer over the same objections. The doctor answered: "For gross movements—by that I mean grabbing some heavy object and lifting which wouldn't require fine movements of the arm and hand—I would estimate 20 to 30 per cent regain of that type movement. For fine movements, requiring picking up fine objects, twisting, turning, grasping, the estimate is less than one per cent."

Defendants argue the admission of this testimony violates the rule as to admission of expert testimony in that the subject of the inquiry was not a matter of medical knowledge and there is no testimony showing the witness had any general knowledge or experience concerning the functioning or efficiency of an artificial arm. Defendants admit such inquiry could, under proper circumstances, be the subject of expert opinion but their argument is that here there was no proper foundation shown for any opinion by the witness. We need not decide whether a doctor who handled an amputation case would always be qualified to express an opinion concerning the functioning and efficiency of an artificial limb. Here there was ample testimony by the doctor that he had handled many amputation cases. He said: "I have handled amputation cases prior to the case of the plaintiff * * *. I have been practicing since 1950 and I think we have had one arm amputated that compares with this. We have had others on legs, finger amputations, many hand—arm amputations * * *. I have also amputated partial hands, fingers, arms at below the elbow, legs, various sights of amputation." The doctor, who was plaintiff's doctor since before the accident, testified without objection that he knew how much use of the arm plaintiff would regain after he would be fitted with an artificial arm and gave it as his opinion that plaintiff could probably be fitted with an artificial arm within about a month and he described in detail how the amputee is fitted with an artificial limb and the care that must be taken to prevent pressure and ulceration. He displayed a good deal of knowledge about artificial limbs generally and he stated: "It takes a patient from three to six months to get fair efficiency in operating an artificial arm unless the arm is painful, for reasons that I have

said before. If it is painful it may take as long as a year. I don't believe I have seen one that could get much efficiency in less than three months."

The determination of whether a medical witness's learning and training qualify him to give an opinion rests largely within the discretion of the trial court. State v. Donovan, 128 Iowa 44, 102 N.W. 791.

We see no prejudicial error in the trial court's ruling that allowed the doctor's opinion testimony. The foregoing would certainly show the doctor was qualified to give some evidence in the form of an opinion with respect to the use of artificial limbs.

The doctor stated he based his opinion of the percentage of ability which would be regained by the use of an artificial arm on "previous education, previous experience and standard adjustment guides that are supplied for this type of thing." Defendants argue this bit of testimony shows the doctor's opinion was based, in part at least, on hearsay, and its motion to strike the doctor's previous opinion should have been sustained. Defendants' argument is: "the witness was allowed to base his opinion, in part, not upon standard scientific treatises, but upon pamphlets published by the manufacturers of artificial arms, containing their opinions as to the merits of their manufactured products * * *." There is nothing in the record to show that a "standard adjustment guide" is a manufacturer's pamphlet puffing its product. Defendants did not attempt to cross-examine the doctor as to the "standard adjustment guide" he used. Defendants admit the soundness of the general rule that allows physicians to base their testimony on what they learn from medical writers. But, defendants argue, the standard adjustment guide used by the doctor "was different from standard medical textbooks generally used and usually recognized by the profession." The trouble with the argument is, there is nothing in the record which describes the standard adjustment guide. It may be just as standard in the field of artificial limbs as a medical textbook in the field of medicine. At any rate we hold under this record no prejudicial error is shown in the trial court's refusing to sustain the motion to strike the doctor's testimony on the ground of hearsay.

■ Although it is not argued by plaintiff, we cannot see how prejudicial error would result if the rules for admission of testimony were not observed in the admission of the doctor's opinion testimony. The doctor was not testifying as to the extent of disability plaintiff suffered by reason of the accident but as to the extent of ability that would be regained by the use of an artificial limb, which would tend to decrease the damages. So long as this evidence was not opposed by other evidence of a greater per cent of a regained use by an artificial arm it is difficult for us to see how its admission would ever be prejudicial to defendants. As stated in 25 C. J. S., Damages, section 145: "The admission of incompetent testimony as to damages is not fatal where the defendant has not been prejudiced thereby."

■ II. It was admitted plaintiff was driving with his arm protruding outside the open left front window of the car. Defendants requested the court to instruct the jury: "If you find from the evidence that the fact that his arm was so protruding from said window, in any manner or in any degree directly contributed to the injury sustained by plaintiff, then and in that event you would be warranted in finding plaintiff guilty of contributory negligence. * * *."

The proposed instruction amounts to a request that the jury be instructed that driving with the left arm protruding from the open window would constitute negligence. It was rightly refused. Olson v. Tyner, 219 Iowa 251, 257 N.W. 538. The judgment of the trial court is affirmed.—Affirmed.

All JUSTICES concur.