ERNEST EDWARD TRACHTA et ux., appellants, v. IOWA STATE HIGHWAY COMMISSION, appellee.

No. 49301.

(Reported in 86 N.W.2d 849)

376

DECEMBER 17, 1957.

Edward L. O'Connor, of Iowa City, for appellants.

Norman A. Erbe, Attorney General, Daniel T. Flores, of Ames, and Bryce M. Fisher, of Cedar Rapids, for appellee.

LARSON, J.—Plaintiffs own a 160-acre farm located about 1½ miles south of Cedar Rapids in Linn County, Iowa. Relocation of Highway 218 by the State Highway Commission required a strip of land along the east side of the farm totaling 4.62 acres. In addition to the land taken, certain grading, paving, and culvert replacements on and under the new highway were alleged to have affected adversely the use, occupancy and enjoyment of the farm. The new 200-foot highway, with a 24-foot cement pavement running north and south, replaced a 60-foot county gravel roadway lying east of and abutting 120 acres of plaintiffs' land. Plaintiffs' farm consisted of two 40-acre tracts in line, north and south, referred to herein as the north 80 acres, upon which was located the residence and farm buildings. Lying directly south of this land was a 40-acre tract which belonged to a Mr. Modracek, and then directly south of that tract was another 40 acres of land owned by plaintiffs upon which was a second set of farm buildings. A county road ran east and west past this land. Directly behind, or west of Mr. Modracek's 40 acres, was another 40-acre tract owned by plaintiffs. Although this tract touched the north 80 acres on the northeast and the south 40 acres on the southeast, it was necessary to obtain rights to pass between them from owners of other land. Such rights were obtained by easement on the south and only by permission on the north. While the land was all used in one farming operation and the 40-acre tracts were rotated, the usual transportation of livestock and machinery to and from the north 80 and south 40 was by the county roads.

In their appeal plaintiffs contend, due to errors of the trial court, certain competent and material evidence was excluded from jury consideration, thus preventing a just award of compensation as by law required. They list twelve errors.

██ I. The real question before us in this case is the competency of testimony offered to show the estimated cost of structures deemed necessary to counteract a claimed detriment to the property suffered by the condemnation or taking under eminent domain. When evidence of the cost of new structures—in one case a new corral on the south forty, and in another, new drain

tile to care for an alleged increase in surface water discharged on plaintiffs' north eighty—was offered, objections were made and sustained on the basis that such evidence was speculative, uncertain, and did not tend to prove the proper measure of damages. Plaintiffs complain of this ruling, but in sustaining the objection and striking testimony concerning costs of these structures, often volunteered before an objection could reasonably be made, we think the trial court was correct. By reason and by precedent we recognize the general rule that the various detriments may be shown in such matters, but estimates of costs necessary to offset the detriment for erecting new structures such as buildings, fences, walls, and drain tile cannot be shown. This rule is discussed and the reasons for it are fully set out in Randell v. Iowa State Highway Comm., 214 Iowa 1, 10, 241 N.W. 685. There appears to be but one exception, which relates to the moving of a present structure such as a fence where exactly the same wire, posts and braces are used, and there is no uncertainty as to its establishment and future maintenance. Randell v. Iowa State Highway Comm., supra.

Plaintiffs urge that the need for a new corral was shown, that the exact size was determined, and that an expert could testify as to costs, but as set out in the Randell case, the need, as well as the type, future use, etc. were questions for the jury to determine, and suppositions as to need, use and expense were incompetent and highly speculative as to the establishment of the then value of the property. The fact that the jury may also become confused as to its proposed purpose of explaining the after-taking value of the property, and add this estimated cost to the loss of value to the farm as a whole, further illustrates the impropriety and incompetency of such testimony. Here there were at least three ways to transport machinery and livestock to and from the south forty—by herding down the west shoulder of the new highway, which was by itself wider than the original road; by fencing a lane over his own land and using the acquired right-of-way over his neighbor's property; and by trucking. Expenses, of course, would be incurred in each method, but this expense would be of little aid in determining the after-taking property value, though it might help evaluate the detriment. The question as to the over-all effect of the detriment, if found to exist, is best

left to the jury, and evidence of the loss to the whole property, as considered by competent valuation witnesses who consider each of the alleged detriments, is sufficient aid in that determination. Here the valuation witnesses, both for plaintiffs and defendant, in giving their estimate of the value of this farm before and after the taking, considered the water diversion and tiling problem, the cattle transportation problem, the disturbance of peace and quiet, the loss of land, and the removal of several rods of fencing. They gave various interpretations as to the seriousness of the alleged detriments, and for what weight the jury wished to give them, in the determination of the ultimate fact, their opinions were available.

■ ■ II. Testimony of collateral facts in support of estimates of value in a condemnation case must be left largely to the discretion of the presiding judge. We have been consistent in holding evidence of separate values of needed improvements is not admissible as an independent item of damage. Evidence of improvement values can only be used to explain and support the estimates of value of the entire property. Hayes v. Chicago, R. I. & P. Ry. Co., 239 Iowa 149, 152, 30 N.W.2d 743, and citations; Ranck v. Cedar Rapids, 134 Iowa 563, 566, 111 N.W. 1027; Randell v. Iowa State Highway Comm., supra. On direct examination of value witnesses, ordinarily the market value of the land together with the improvements, taken as a whole and not separately, is to be shown, and the value of the improvements apart from the land may not be then shown. Ranck v. Cedar Rapids, supra; Hayes v. Chicago, R. I. & P. Ry. Co., supra, and citations.

Turning first to listed Error No. 3, plaintiffs contend the court was in error in sustaining defendant's motion to strike testimony given by the plaintiff Ernest Trachta as a witness for himself on direct examination when he said, "Since the building of the new highway there is only one way that I can get my cattle from my home place down to the pasture [on the south forty acres] and back again and that is by trucking them. I will have to hire a trucker, load up the cattle and truck them down there. There will have to be a corral built down there with a chute, and that is where I will have to unload them—and that corral has to be there so I can load them up and come out of there with them."

Defendant's motion to strike the answer for the reason that it is an opinion and conclusion, conjectural, speculative, incompetent, irrelevant and immaterial, was sustained "after he said he would have to truck them." We think that the ruling was correct, as the portion stricken was clearly voluntary and unexpected. The motion also was timely, for it was made as soon as convenient following the witness's voluntary statements subsequent to answering a proper question. Walrod v. Webster County, 110 Iowa 349, 81 N.W. 598, 47 L. R. A. 480; Miller v. Davis, 193 Iowa 611, 187 N.W. 433. Furthermore, as indicated in Division I, the testimony did not relate to a proper measure of damages. Randell v. Iowa State Highway Comm., supra; Welton v. Iowa State Highway Comm., 211 Iowa 625, 233 N.W. 876; Dean v. State, 211 Iowa 143, 233 N.W. 36; Kosters v. Sioux County, 195 Iowa 214, 191 N.W. 993.

Thereafter Trachta testified that he did not have a corral on the south forty, and to the question, "Are you going to put in a corral down there" the defendant's objection that it "calls for an answer which is speculative and conjectural, and a guess" was sustained. Next, plaintiff was asked, "Now, how large a corral will it be necessary for you to build on your south forty?" Objection was made as "improper direct examination, not a proper measure of damages * * *", which the court sustained. These rulings were correct. Randell v. Iowa State Highway Comm.; Welton v. Iowa State Highway Comm.; Dean v. State; Kosters v. Sioux County, all supra.

Obviously the plaintiff was improperly attempting to introduce evidence of the cost of building a new corral on his south forty. As to such evidence we said in Randell v. Iowa State Highway Comm., supra (page 14 of 214 Iowa):

"Such cost [of building a *new* fence] cannot be considered at all by the jury as an item of damage. While evidence may be introduced * * * to show that a fence may need to be built, repaired, and replaced, yet there can be no recovery for the fence as a fence, nor can such cost as such be added to other items of damages found by the jury."

As to showing costs of *replacement* of a definite fence existing before the condemnation which was rebuilt after condemnation, we said at pages 12, 15 and 16 of 214 Iowa:

"There is no obscurity, speculation or guess about it. When, however, an *additional hypothetical fence* is contemplated, at a new place created by the condemnation, another situation is presented, as shown by Dean v. State (211 Iowa 143), supra * * *. [Emphasis supplied.]

"Here, however, * *· * there was no fence before, and there never may be one in the future. * * * A hypothetical fence may be constructed * * * yet that will not solve the problem. Said fence must be repaired, and, sometime in the future, replaced. * * * However, the burden of fencing this new territory, if it is to be fenced, will continue always. * * * The mere attempt to find a basis for the introduction of such testimony involves so many theoretical elements that the result is utter confusion. It is necessary to base hypothesis upon hypothesis and theory upon theory ad infinitum. Thus, under the circumstances, the evidence of the hypothetical fence is not helpful: First, to indicate that the damages are substantial as distinguished from nominal; second, to use in explaining, supporting, or denying the estimates made of the value of the land by other witnesses; or, third, for any other purpose."

█ We conclude that evidence of the cost of a hypothetical structure such as the corral in the case at hand cannot be considered as an element of damage to the farm, and that the court's rulings were not erroneous; (Dean v. State; Welton v. Iowa State Highway Comm.; Randell v. Iowa State Highway Comm., all supra; Baird v. Minneapolis & St. L. R. Co., 214 Iowa 611, 243 N.W. 515) that plaintiffs had a right to call the jury's attention to any undesirable resulting situation which would adversely affect the farm value; but that evidence of the cost of any plan or scheme to overcome the lessened value is much too speculative and uncertain, even though accurate estimates of proposed structural costs may be available. As a further illustration, instead of building a corral, it may be argued plaintiffs could hire expert cowhands twice a year to herd the cattle over the highways as before. Under those circumstances the collateral claim would be the cost of such hands as competent evidence of the value of the detriment. This same contention we flatly rejected in Randell v. Iowa State Highway Comm., supra. The witnesses there were permitted to answer that $140 per year would be needed to

pay for that service. One of the uncertain items pointed out was that the cost of such services would vary with the number of cattle transported year after year. Here Trachta testified he had as few as 112 head and as many as 277 head of cattle to place on pasture each year. In discussing that problem, we said on page 8 of 214 Iowa: "* * * appellee unquestionably may show this increased burden on the farm, if it be such, in order that the jury may determine the difference in the value of the land immediately before and immediately after the condemnation. When doing that, however, appellee has no right to ask his witnesses to speculate and guess concerning the cost aforesaid, as he did in this case. * * * Clearly the district court should have refused to permit the witnesses to answer. Moreover, * * * questions of this kind, which ask the witness to enter the field of speculation and conjecture, never should be asked or answered."

So here, whether the cattle were transported by hoof, truck, over newly fenced drives on his own land and easements, and the relative expenses which *may* thus be incurred in each instance, are considered too speculative.

III. It is contended in listed Error No. 2 that the court erred in refusing to permit certain testimony as to the alleged interference with the flow and distribution of surface water entering his land. Some of the offered evidence may well have been admitted. Substantively that evidence which related to the establishment of the detriment was clearly admissible. Plaintiff was asked:

"Q. Now, Mr. Trachta, you may state to the court and jury whether or not the building of this new highway has interfered in any way with the flow of water on your north eighty, or any part of your farm? A. Yes, it has on the north eighty. Q. State to the court and jury in what respect? A. Well, now, with the gravel road it will take a lot of water when it rains on it, but the pavement is a hard surface that is as hard as this floor—every time you get a quarter, half, or three quarters of an inch of rain, where it goes off that pavement your ditches they can't take that water—so where does it go?—goes down the ditch right into the field, and, furthermore, they took a borrowing pit and dug the dirt out and there is nothing but clay, and clay don't take water.

When you work soil it is like a sponge, it is soft, but when you take off three, four or five feet of dirt like the highway commission has done and roll it down with heavy equipment, the water stands after a little rain for several days—and it goes down the ditches from both sides and goes down in the sloughs—."

The defense moved "to strike the answer * * * —as nothing but self-serving declarations, opinion and conclusion of the witness * * * and guess", which the court sustained.

While it is true much of the statement could be classified as an opinion and self-serving, it was, we think, a statement or explanation of the fact that the water runoff on his land was greater and faster due to the improvements. The plaintiff later testified that before the improvement no water collected and remained on the north eighty, but "since the erection of this new 24-foot paved highway, water has collected in the two sloughs on my north eighty—right down those sloughs the water will spread out anywhere from a rod and a half to two rods wide—it goes clear down the sloughs until it gets to the north end, then goes under the highway and into the neighbor's field below." In answer to the question as to how long the water now remains in those sloughs, he said, "Oh, it takes a little while after a rain; I didn't watch it that day, but I suppose possibly maybe half an hour—it depends on how wet the ground is * * *. It is going to be necessary for me to put in additional tiling."

Defendant argues the court's erroneous exclusion of this testimony, if it was error, was without prejudice. From the record we learn that the question of runoff and absorbing qualities of the soil was testified to by several witnesses both on direct and cross-examination. The jury was well aware of the issue as to whether or not there was additional surface water in substantial amounts reaching plaintiffs' land as a result of the improvement. It would appear that the part struck was little more than cumulative and no serious prejudice, we think, resulted from sustaining the motion. Hall v. Shenandoah, 179 Iowa 1192, 162 N.W. 575.

The general rule announced in our decisions is that on direct examination we must examine the questions, objections and rulings, together with similar evidence elsewhere admitted, to determine whether their admission or rejection is prejudicial.

Also see In re Guardianship of Lyons, 239 Iowa 968, 33 N.W.2d 423; Fagen Elevator v. Pfiester, 244 Iowa 633, 56 N.W.2d 577; Jaeger v. Hackert, 241 Iowa 379, 41 N.W.2d 42; Korf v. Fleming, 239 Iowa 501, 32 N.W.2d 85, 3 A. L. R.2d 270.

The trial court's discretion in sustaining or denying such a motion based upon the form of the question asked is broad and, unless prejudice is shown, such ruling will not be disturbed. Spiers v. Hendershott, 142 Iowa 446, 120 N.W. 1058. We also note that counsel did not re-examine Trachta as to the reasons for the increased flow, although the volunteered statements had gone out.

Mr. Trachta testified as to a change in size, but not location, of two culverts under the highway, one near the north end of his eighty and the other a little south of the center of that tract. Eighteen-inch culverts were replaced by new ones 24 inches in diameter, but there was no testimony as to any increased flow through them. It is difficult to see how the change in the size of the culverts alone would in any manner increase the volume of water that reached plaintiffs' land. It is hard to see how this factual situation alone could justify a question as to an increased water detriment, especially since it was conceded that no new or different drainage territory was involved. The size of the culverts does not infer there will be added surface water. Trachta did testify that as a result of the new grading of the right-of-way, the old ditch which used to run north from his buildings some 15 or 18 inches to two feet deep was removed and the land was now flat from the new culverts to his property line, and this in turn resulted in the water reaching his property faster. The water from the culverts then flowed directly across his land westward and northward in two sloughs or swales. In explaining his contention that there was additional water, plaintiff Trachta said, "There would be standing water in the sloughs if it isn't tiled out." On cross-examination he denied that the absorbing ability of the wider shoulders would compensate for the loss due to the 24-foot cement slab, saying: "The water when it comes makes waterways, and it will come down the pavement —runs down a ways, and where does it go? It follows the low spots—goes down that road and into these sloughs."

Plaintiffs' witness Mr. McGregor had done some tiling for them on this land and told how the water followed ditches north prior to the improvements. He testified as to the leveling of the land where the ditches were before, but to the question "* * * can you tell * * * what is happening and what will happen with reference to the drainage through those culverts onto Mr. Trachta's farm" he said, "Well, in observation there doesn't appear to be any watercourse present there now; the surface of the ground is perfectly level, and the grass is normal growth; *the effect of twenty-four inch culverts, I don't know*—depending on the amount of water that will flush across that surface—but there was no evidence of existing waterways there now." (Emphasis supplied.) Thereafter the court sustained the defense counsel's objection to the question, "Suppose those culverts would discharge water—fully discharge water to the west of the highway, what effect would that have on Mr. Trachta's land?" An opinion based upon such a supposition was not proper and the trial court could do nothing else in view of other testimony that the drainage area had not been disturbed, or an affirmative showing made that the culverts ever ran full. An answer based on no adequate factual foundation is of no evidentiary value and should be rejected. Hiber v. St. Paul, 219 Minn. 87, 16 N.W.2d 878. On the other hand there was testimony that the increased size was not because of a need for more volume at that place, but because uniform highway commission standards of new highway construction permitted no culverts of a less diameter. The objection based on speculation and guess was sufficient and fully justified the court's ruling on this question. Britton v. D. M., O. & S. R. Co., 59 Iowa 540, 13 N.W. 710. In addition, there was no showing as to what the answer of the witness would have been in this direct examination. There was no offer. There being no foundation laid for this assignment of error, the trial court's ruling should not be disturbed. Johnson v. Johnson, 245 Iowa 1216, 65 N.W.2d 157.

The witness McGregor was next asked, "From your knowledge and experience, and from your observation and your investigation of the culverts and level of the land in front of the culverts to the west of the highway, will those [presently installed] four-inch tile be sufficient to carry the water that will

naturally be dumped, or naturally flow through the culverts onto Mr. Trachta's farm?" Defendant's objection "calling for the opinion and conclusion of the witness" was sustained. It may well have been overruled. As a qualified witness his opinion was proper. While we may believe this ruling error, it was not of itself reversible error, for here again no offer was made as to what the witness's answer would have been, nor would it, viewed most favorably to plaintiffs, have been more than accumulative of plaintiff's testimony that the tile would not carry the additional waters from a heavy rainfall. Johnson v. Johnson, supra; In re Will of Smith, 245 Iowa 38, 60 N.W.2d 866; Kuiken v. Garrett, 243 Iowa 785, 51 N.W.2d 149, 41 A. L. R.2d 1397; Ladd, The Need in Iowa of an Offer of Excluded Testimony for Appeal, 18 Iowa L. Rev. 304.

The next question asked Mr. McGregor regarding his estimate of the *cost of new tiling* to take care of the added runoff, repeats the problem discussed in Divisions I and II hereof, and was clearly improper for the reasons there set forth. It was correctly sustained as too speculative. See citations under Divisions I and II hereof.

We conclude, therefore, that no reversible error appears relating to the court's rulings upon offered testimony as to drainage interference. There was ample evidence of a dispute as to the effect of the improvements on the drainage across plaintiffs' north eighty acres. The testimony disclosed the factual conditions present, and the jury heard the valuation witness consider and evaluate the claimed interference or detriment. The resultant loss in the value of the farm as a whole was for their determination.

IV. The remaining errors listed refer to the trial court's discretion on ruling upon objections, admitting exhibits, and striking testimony deemed improper. The rule is so well settled on these matters as to require few citations. Unless it clearly appears that the trial court's rather broad discretion is abused, this court will not interfere. Kuiken v. Garrett, supra; In re Guardianship of Lyons, supra, 239 Iowa 968, 33 N.W.2d 423; Fagen Elevator v. Pfiester, supra, 244 Iowa 633, 56 N.W.2d 577.

388

▆▆ Listed Error No. 1 refers to the admission of aerial photo exhibits showing the location of the land. Identification was waived. Plaintiffs contended the exhibits were a "little hazy" and not a correct representation of the objects attempted to be shown. The photos are not sharp ones, but we think fairly show the land, roads and buildings involved from a high altitude. All witnesses testified the area "looked about the same" as the photographs showed it. The admission of these exhibits did not constitute error. Weilbrenner v. Owens, 246 Iowa 580, 68 N.W.2d 293; Stiefel v. Wandro, 246 Iowa 807, 68 N.W.2d 53; Ingebretsen v. M. & St. L. R. Co., 176 Iowa 74, 155 N.W. 327; Crawford v. Emerson Constr. Co., 222 Iowa 378, 269 N.W. 334.

▆▆ V. Listed Errors Nos. 4 and 6 complained of questions by defendant's counsel on cross-examination. Plaintiffs' witness Modracek said he had often helped drive cattle to and from the north 80- and south 40-acre tracts. As he hesitated in stating the number of times, defendant's exhortation for the witness to "just tell the truth" was alleged to be misconduct and reversible error even without objection. We do not agree. Standing alone, this implication, if it was an implication, of dishonesty is not so conclusive as to require a reversal. It was far less insinuating than plaintiffs contend and we doubt that it had any adverse effect on the jury deliberation.

▆▆ The other complaint arose when Mrs. Trachta was asked about airplanes in the vicinity. She said, "There are frequent flights of aeroplanes landing at the airport about a mile from our home—we have been awakened many times by them." When asked, "And those aeroplanes, and your peace and quiet being disturbed as a result, has gone on how long" plaintiffs objected as not proper cross-examination. The court overruled the objection. Plaintiffs claim error because the matter of interference of the witness's peace and quiet, confined in her direct examination to the increased highway traffic, was not gone into on direct examination as to airplanes. We think the testimony as to disturbance by unusual noises was not so foreign to the inquiry as to be unreasonable or prejudicial. The ruling of the court was not clearly wrong.

At any rate we are satisfied in each of these instances the court did not abuse its broad discretion as to the scope of the

cross-examination. Perhaps language with less implication of untruth might have been used or other ways found to detect suspected exaggerations, but the trial court was within its discretion in ruling upon the objections as made. Even if we think the rulings erroneous, it appears the parties suffered little, if any, prejudice from them, and they must be held insufficient basis for reversal. Fagen Elevator v. Pfiester, supra, and citations; Central Fibre Products Co. v. Lorenz, 246 Iowa 384, 66 N.W.2d 30; Dioptron Co. v. Dimmitt, 245 Iowa 450, 62 N.W.2d 749; Hope v. Ted McGrevey, Inc., 241 Iowa 1022, 44 N.W.2d 369; Robbins v. Weed, 187 Iowa 64, 169 N.W. 773.

VI. Listed Errors Nos. 5, 7 and 11 refer to rulings on objections to questions by plaintiffs' counsel to valuation witnesses McGregor, Henderson and Ulch. The testimony of McGregor concerning interference with drainage water we have fully considered in Division III hereof. The testimony of Henderson, a valuation witness, related to a question framed as follows: "From your experience as a farm appraiser and as a realtor * * * do you have an opinion as to whether or not the new highway, with the new culverts put in the way they are, would have any damaging effect upon putting more water on Mr. Trachta's farm than what ordinarily would flow on the farm from—during the time the old road was there?" The court sustained the objection that the question was "leading and suggestive, no foundation having been laid, calling for the opinion and conclusion of the witness, * * *." Even so, perhaps the answer should have been admitted. Plaintiffs assert that the question merely asked as to whether he had an opinion as a result of the situation he observed. On the other hand, perhaps the question should have been reframed if that was the purpose. No attempt was made to do so and no proffer was made. We do not know what his answer would have been. Thus the error, if it was error, was not shown to be such as to require a reversal. Johnson v. Johnson, supra, 245 Iowa 1216, 65 N.W.2d 157; Kuiken v. Garrett, supra, 243 Iowa 785, 51 N.W.2d 149, 41 A. L. R.2d 1397; Grismore v. Consolidated Products Co., 232 Iowa 328, 342, 5 N.W.2d 646, 655; Spiers v. Hendershott, supra, 142 Iowa 446, 120 N.W. 1058.

VII. In listed Error No. 11 it is contended the trial court should have permitted Mr. Ulch to answer plaintiffs'

question on cross-examination as follows: "Now, in fixing the present valuation of the Trachta farm at $525 per acre, as of a week ago, did you take into consideration the fact that the Trachta farm or parts of it could be used for suburban lot development?" The objection of "improper cross-examination" was sustained. Here again the answer might well have been permitted, although it is true no record evidence appears that any lands thereabout were used or considered for suburban development. The record disclosed only that the premises were farm lands zoned as such and did not reveal any testimony concerning a suburban development thereabout. Generally a party has no right to cross-examine a witness except as to facts and matters stated in the direct examination. Jones v. Spencer, 188 Iowa 94, 175 N.W. 855. On the other hand, we have often said cross-examination should not be unduly restrictive. Hall v. West Des Moines, 245 Iowa 458, 62 N.W.2d 734; State v. Wright, 200 Iowa 772, 205 N.W. 325. We also recognize that considerable latitude must be given the trial court in determining what is relevant to the issue being considered. Considering this latitude we do not feel such an error, if error it was, so real and material as to be the basis of reversal in this case. Here it could only affect the weight to be given this expert's valuation of the farm as a whole, and might well have been of little or no consequence, whether or not it was so considered.

VIII. Listed Errors Nos. 8, 9 and 10 relate to testimony of defense witnesses on the matter of surface water damages claimed in the north eighty acres. As already indicated, the admission of such opinion evidence lies largely within the trial court's discretion, and the court's rulings depend greatly on the form of the questions asked. Ruth v. O'Neill, 245 Iowa 1158, 66 N.W.2d 44; Prokop v. Houser, 245 Iowa 480, 62 N.W.2d 781. We prefer here to abide by the trial court's judgment that the witnesses Terry and Wiley were qualified to express opinions on the subjects of inquiry. Grismore v. Consolidated Products Co., supra. Terry was a highway engineer and worked with soil, gravel, paving and other road building substances. He was qualified to testify as to the absorbing characteristics of various road building materials, including a gravel road. Mr. Wiley was

qualified, we think, to state whether or not in his valuation of the farm generally he found any loss due to interference with the enjoyment of the farm for living purposes. There were no prejudicial errors in these rulings.

IX. In listed Error No. 12 plaintiffs complain bitterly that they were prejudiced by the testimony of Mr. Ulch, a valuation witness produced on behalf of defendant. Although plaintiffs did not object, the witness testified first that after the improvements he considered the farm worth more than before the taking. The pavement he considered was a betterment. Such testimony, of course, was improper, being in violation of section 18, Article I, of the Iowa Constitution. The trial court properly struck it out. Plaintiffs contend this did not cure the damage. We disagree. In redirect examination defendant attempted to get at the detriment, if any, the witness thought plaintiffs suffered without considering the benefit, and in doing so asked Mr. Ulch:

"Now, I am going to ask you to give us your estimate or appraisal of that farm at this time, without giving any consideration whatever to the fact that there is a cement highway running along the east side—in other words, without giving any consideration to the benefit that might have accrued to the owner of the farm?" Objection was made as "improper", and that it "doesn't ask for information concerning the true measure of damages." The court overruled the objection and the witness answered, "Well, of course, if I didn't consider the pavement, it would be different. * * * if I didn't consider the pavement without them five acres I wouldn't consider the farm worth as much. Q. What would the valuation of your appraisal be? A. Well, I would consider the five acres about $3000 less, which would be $69,000."

Plaintiffs complain of the use of the term "at this time" in the question asked, as well as the statement of what he did not consider. We find no merit in this assignment for clearly the only object of this interrogation was to determine the opinion of the witness as to an appraisement of the detriment suffered due to the improvement. The witness had previously been asked the value "after the taking," and although standing alone the ques-

tion as framed may have been improper, the query was not reasonably misunderstood. Clearly the witness believed the only substantial loss or detriment was confined to the loss of land, and when as required by the Iowa Constitution, Article I, section 18, it was brought to his attention that he "shall not take into consideration any advantages" he gave an unmistakable opinion as to the lost value, immediately after the taking. This opinion was for jury consideration.

 X. Ordinarily a verdict will not be disturbed because of its size unless it is so flagrantly excessive or inadequate as to shock the conscience or raise a presumption it was the result of passion, prejudice or undue influence. Each case must turn on its own facts. Weilbrenner v. Owens, supra, 246 Iowa 580, 589, 68 N.W.2d 293, and cases cited therein. We do not feel the record taken as a whole discloses that plaintiffs failed to receive just compensation. The average difference in value before and after taking as expressed by the opinions of plaintiffs' valuation witnesses was about $11,000. The average opinion by defense valuation witnesses was about $3200. The sheriff's commission awarded $2603. The jury raised the award to $4800. The jury viewed the premises to better understand the testimony of the witnesses and acted under acceptable court instructions. It cannot be said the jury here failed to fairly consider the various proven detriments, nor is it apparent from the verdict that it did not render fair compensation for the taking.

Having found no reversible error, the verdict and judgment is affirmed.—Affirmed.

All JUSTICES concur except SMITH, J.